**UNITED STATES of America ex rel. James IRWIN, Petitioner-Appellant,**

**v.**

**Frank J. PATE, Warden, Illinois State Penitentiary, Respondent-Appellee.**

**No. 15399.**

United States Court of Appeals Seventh Circuit.

March 3, 1966.

James Irwin, pro se.

William G. Clark, Atty. Gen. of State of Illinois, Chicago, Ill., Richard A. Michael, Philip J. Rock, Asst. Attys. Gen., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Petitioner, James Irwin, has appealed to this court from an order of the district court dismissing his petition for a writ of habeas corpus, without a hearing, for failure to state a claim on which relief could be granted.

` Petitioner was not represented by counsel and has proceeded herein *pro se.* This case was ordered submitted on the record and briefs, without oral argument. Petitioner had counsel in his state court trial. He is presently incarcerated in the Illinois State Penitentiary.

In support of his petition, petitioner alleged that he was not informed of his right of assistance of counsel during a period of interrogation which preceded his oral confession and that he was not advised of his right to remain silent; that a confession inadmissible under Illinois law was admitted in evidence against him; and that the prosecutor improperly commented upon petitioner's refusal to testify with respect to certain matters.

In November, 1959, the Bower Photocopy Company store in Chicago, Illinois was broken into and a checkwriter, artists' materials, an air brush, and a number of blank company checks were stolen. Petitioner was brought to trial in the state courts of Illinois for the burglary of this store.

Chicago police officers and a deputy sheriff of Lake County, Charles Larson,

testified that on January 26, 1960 petitioner freely and readily confessed to the burglary. Petitioner, however, testified that the only reason he confessed on that date was because the police threatened to put his wife in jail and he feared for her safety.

During the trial, in a hearing out of the presence of the jury on a motion to suppress the confession, deputy sheriff Larson was permitted to testify, over objection, but after defense counsel first had an opportunity to question him privately, that petitioner had freely confessed to him on January 23, 1960, as well as later on January 26, 1960, in the presence of other police officers.

The trial court denied the motion to suppress the confession made on the 26th of January, 1960.

During the trial before the jury, the prosecution attempted to bring out evidence respecting the January 23 confession. The trial court was reluctant to allow such evidence, but finally ruled that the prosecution's questions were proper and that the confession of January 23 could be admitted for impeachment purposes, the petitioner having testified and claimed coercion only in the January 26 confession.

During an attempted cross-examination on the confession of January 23, 1960, petitioner refused to testify on the ground of self-incrimination.[1]

---

1. The following, which is taken from petitioner's "Abstract of Record," indicates the apparent extent to which the confession of January 23 was before the jury as well as the circumstances under which petitioner invoked the Fifth Amendment.

"*Cross Examination by Mr. Greenfield (Attorney for the People)*

"* * * I was arrested on the 23rd of January, 1960, and taken to the Sheriff's Office in Waukegan, Illinois.

"Mr. Greenfield: Q. Did you not have a conversation with him at that time?

"Mr. Stein: (Counsel for the Defendant) Objection.

"The Witness: A. Yes, sir.

"Mr. Stein: Ask that it be stricken.

"The Court: Overruled.

"Mr. Stein: And ask that a mistrial be declared.

"The Court: Denied.

"Mr. Greenfield: Q. Now, on the 23rd, did Sheriff Larson threaten you with respect to your wife?

"Mr. Stein: Objection, and ask that that be stricken.

"The Court: Overruled.

"The Witness: A. Not as I remember, sir.

"Mr. Greenfield: Q. The first time that anyone ever mentioned your wife was on the 26th, is that correct?

"A. Yes, sir.

"Q. And on the 23rd, did you have any conversation with the Sheriff?

"Mr. Stein: Judge, I am going to object to any reference as to the 23rd. I am going to renew my objection for a mistrial. I am going to ask your Honor to caution the State's Attorney about questioning about the 23rd, which has no relevancy.

"The Court: Mr. Reporter, come over here.

(Thereupon, the following proceedings were had outside the hearing of the jury:)

"Mr. Greenfield: Well, the same situation as before; he claims that the confession on the 26th was coerced because of certain threats yet in fact he had already made a confession on the 23rd and [now] he is taking the stand and I think I should be permitted to inquire into what took place on the 23rd.

"Mr. Stein: He wants to go in the back door where he can't go in the front.

"The Court: Well, he opened the door by saying that he was coerced in making the statement.

"Mr. Stein: On the 26th.

"The Court: Either.

"Mr. Stein: There is no coercion on the 23rd.

"The Court: If he had already made a confession on the 23rd, there would be no reason for the police coercion.

"Mr. Stein: They should have used it. They can't impeach him now from a document or a statement which is not in evidence, which they are trying to do.

"The Court: Overruled.

"Mr. Stein: Exception.

(Thereupon, the following proceedings were had within the hearing of the jury:)

"Mr. Greenfield: Q. Now, on January 23rd, when you spoke with Sheriff Larson, was anyone else present?

"Mr. Stein: Objection.

"The Court: Overruled.

"The Witness: A. I don't believe there was, sir, not in the little room he had me in. I don't believe anyone else was there.

"Q. Was that one of the rooms—

"A. I don't know what you would call it. It was in the County Jail Building.

We have held that the rule of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which protects the right of assistance of counsel once the accusatory process has focused on an individual, is not to be applied retrospectively. United States ex rel. Walden v. Pate, 7 Cir., 350 F.2d 240, 242–243 (1965). Assuming petitioner's allegations with respect to denial of assistance of counsel during interrogation are true, we find no substantive denial of the right to counsel which would prompt the retroactive application of *Escobedo*.

With respect to the confessions, a fair construction of petitioner's "Abstract of Record", together with his allegations, reveals that, contrary to Illinois law,[2] petitioner did not receive a list of witnesses to the January 23 confession, although his public defender had requested copies of any confessions made by him and names of witnesses present at the times such confessions were made.

The confession of January 23 was nominally allowed in evidence. The record indicates, however, that this was merely a technical defect. The confession had been the subject of some discussion in a hearing to suppress the confession of January 26. The witness to the January 23 confession (whose name had been given to petitioner as a witness to the January 26 confession) was revealed, and defense counsel was given an opportunity to question him privately. Furthermore, the record shows that notwithstanding the trial court's admission of the January 23 confession for impeachment purposes, it was never in fact directly before the jury. From such facts, it appears that the admission of the confession was nugatory.

Regardless of the fact that there may have been a technical violation of the Illinois statute,[3] we are of the opinion that it raises no constitutional question.

---

It was a small room off on the side. The little room wasn't over I would say 8 by 6, maybe 8 feet long, very small room.

"Q. At that time, what did he say to you and what did you say to him?

"Mr. Stein: Objection.

"The Court: Overruled.

"Mr. Stein: I make a motion for a mistrial.

"The Court: Motion denied.

"Mr. Stein: A direct contradiction from Mr. Greenfield's statement. I ask for a mistrial.

"The Court: Overruled. Proceed.

"Mr. Greenfield: Q. Would you answer the question, please?

"A. Your Honor, could I ask you something?

"The Court: No.

"The Witness: Yes, sir.

"The Court: Sorry.

"The Witness: A. I refuse to answer on the grounds that it might tend to incriminate me.

"The Court: The jury will retire, please."

2. "Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made shall be given to the defendant or his counsel prior to arraignment, or at such later time as the court, in its discretion, may direct, upon motion by either the prosecution or defense at the time of arraignment. If such confession was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession was made shall be furnished. If the confession was made between the arraignment and the time the case is set for hearing, such fact shall be grounds for a continuance of the case on motion of either party, and the confession shall thereafter be furnished as aforesaid.

"No confession shall be admitted as evidence in any case unless the confession and/or list of names and addresses of persons present at the time the confession was made is furnished as required by this Section." Ill.Rev.Stats. 38 § 729 (1959).

3. The violation of the Illinois statute is said to be technical because in People v. Pelkola, 19 Ill.2d 156, 166 N.E.2d 54 (1960), the Illinois Supreme Court held that where, notwithstanding the fact that a confession had been admitted into evidence without the furnishing of a list to the defendant, there was no prejudicial er-

██ This court does not sit to review the propriety of actions taken by state judges with respect to the admission of evidence, but only to discover whether due process has been accorded petitioner. In order to find in petitioner's criminal trial a denial of that fundamental fairness which is the essence of due process, "we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial." Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941).[4]

██ The record in no way indicates that the "admission" of the first confession prevented a fair trial. The failure to supply the name of the witness to the January 23 confession did not prejudice petitioner, and due process was not denied him.

Finally, petitioner alleges that the prosecutor improperly commented on his refusal to testify on grounds of self-incrimination.

Petitioner took the stand in his own defense. He testified, but refused, on cross-examination, to answer a question relating to such testimony. In final argument, the prosecutor commented several times on this refusal to testify.

As his reason for having invoked the Fifth Amendment, petitioner now alleges that he feared his answer to the question asked him might have incriminated him for other crimes of forgery or engaging in a confidence game, for which crimes he asserts he was arrested on January 23, 1960.

██ Federal standards for the right of exemption from self-incrimination

have been applied to the states, and it has been held that state prosecutors may not comment upon a witness' failure to testify on the ground of self-incrimination. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

██ In applying federal standards, the trial judge has certain duties. In order to sustain the privilege, he must determine whether it is "evident from the implications of the question, in the setting in which it is asked, that a responsible answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

██ In a criminal case, if a defendant voluntarily takes the stand to testify in his own behalf, his testimony may be impeached and he may be cross-examined. The extent of the waiver of the privilege against self-incrimination is determined by what the defendant's testimony makes relevant for cross-examination. Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900); cf. Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

A witness has the choice,

"after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amend-

ror. This was so because there was sufficient evidence in addition to the confession to justify a finding of guilty beyond a reasonable doubt.

4. In Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the Supreme Court held that in the absence of a showing of prejudice to the defendant, it was not a violation of ˙due process for a state to deny counsel an opportunity before trial to inspect his cli-

ent's confession. Cf. Cicenia v. LaGay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). If a state, because of federalism and an absence of prejudice, may deny an opportunity to inspect a confession before trial, a state may, without denying due process, for the same reasons fail to give the name of a witness to a confession, particularly where the name is already known to the defendant because it was given in a list of witnesses to a second confession.

ment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute." Brown v. United States, supra, at 155–156, 78 S.Ct. at 627.

In this case, petitioner was never required to answer the question which prompted his invocation of the privilege against self-incrimination. But the reaction of the trial judge and the evidence in the record disclose that it was not in any way evident from the implications of the question propounded, in the context in which it was asked, that petitioner might be forced to make disclosures implicating him in crimes for which he was not then being tried or respecting which he himself had not testified.

■ There was no good reason for the prosecutor or the court to believe that petitioner's refusal to answer the particular question asked him was legally permissible. Under the facts, such refusal was not permissible, and the ban on prosecutorial comment on the witness' refusal to testify was not violated in this case.

Furthermore, in Tehan v. United States, 86 S.Ct. 459 (January 19, 1966), the Supreme Court held that the rule of Griffin v. State of California, supra, that adverse comment by a prosecutor or trial judge upon a defendant's failure to testify in a state criminal trial violates the federal privilege against compulsory self-incrimination, does not require retrospective application. Even, in *Tehan* and *Griffin*, however, the defendants did not testify in their own behalf. In the instant case, petitioner Irwin did take the stand and testify in his own defense and was subject to cross-examination.

For the foregoing reasons, we hold that the district court did not err in dismissing petitioner's petition for writ of habeas corpus. The judgment order of dismissal appealed from is affirmed.

Affirmed.