479 P.2d 412

**Herbert C. MAXWELL, Petitioner,**

**v.**

**STATE of Arizona, Respondent.**

**No. 2037.**

Supreme Court of Arizona,
In Banc.
Jan. 21, 1971.

Roger C. Mitten, Phoenix, for petitioner.

Gary K. Nelson, Atty. Gen., Phoenix, John F. Taylor, Navajo County Atty., Holbrook, for respondent.

LOCKWOOD, Justice:

On June 12, 1969 this Court received a petition for a writ of coram nobis by defendant in propria persona while in prison. His basic complaint was that he was promised that the minimum sentence would not exceed five years and that if a mitigation hearing revealed that there was no violence, the sentence would not exceed five years. To put it in the words used later by the defendant: "The reason I want to change [the plea] is because they wouldn't keep their bargain * * *. Had I been sentenced to a term not to exceed five years, I wouldn't have changed my plea." In other words, defendant claimed that he ought to be able to withdraw his guilty plea when the sentence imposed exceeded five years, because it exceeded what he had been promised. He also claimed incompetence of counsel.

We granted the writ and ordered a hearing to be held by Judge Greer of the Superior Court of Apache County. The hearing was held on March 6, 1970. Two hundred pages of testimony were taken from defendant, his original counsel, the Navajo County Attorney, Judge Shelley, who handled the original matter in Navajo County, and two of defendant's relatives.

The original record from Navajo County shows that defendant was charged with second degree rape of a fourteen year old girl on three different occasions in Navajo County, and was also charged with a similar offense in Apache County. When the mother of the girl threatened trouble, defendant fled to Texas, where he was apprehended and brought back to the Navajo County Jail. There his wife smuggled in some hacksaw blades with which he attempted to break jail. At his first appearance before Judge Shelley, the judge advised him of the seriousness of the charge and the possible range of punishment. He was found to be indigent and counsel was appointed for him. He pleaded not guilty to the three counts of second degree rape.

He was then forty-eight years old and had been married eight times. At a mitigation hearing (after a change of plea) his mother and sister, and a psychiatrist gave evidence that he had a "strong compulsion

for sexual misconduct" and needed psychiatric help rather than punishment. A former wife testified that he chased other women while she was married to him, and his most recent wife testified that their child was born before her marriage to him. His first wife was only thirteen years old when he married her.

The evidence at the coram nobis hearing shows as follows: From the time of his appointment, to the date of sentence, his attorney Robert T. Jenkins labored diligently and competently on behalf of the defendant. He had defendant examined by a psychiatrist. He investigated the circumstances. When the evidence of his client's guilt appeared to be overwhelming, he embarked upon a series of conferences with the Navajo County Attorney seeking to obtain a favorable recommendation of probation or at least a very short sentence. The county attorney was adamant against making any recommendation, but did yield so far as to agree that he would dismiss two counts and overlook the attempted escape if defendant would plead guilty to one count. Jenkins also pursuaded the Apache County Attorney to agree not to prosecute defendant for the offense committed in that county if defendant received a prison sentence in Navajo County of at least five years. Counsel promptly reported the results of each conference to his client, who for sometime indicated he did not wish to plead guilty to any offense until he knew what sentence would be imposed on him.

Because of defendant's misgivings about a plea, his counsel and the Navajo County Attorney went to Judge Shelley's chambers and discussed the case for about thirty minutes. As Judge Shelley testified " * * * they wanted to find out what I would agree to as part and parcel of their consideration * * * the discussion then went around the subject of if the defendant is willing to plead guilty, what would be the maximum minimum sentence." After being told the facts, Judge Shelley observed that he did not think that the case was one for probation; that eight years would be about right; and that he would be willing to agree that the minimum sentence given would not exceed eight years if only one count were before him, and defendant pleaded guilty to it. Before the conference ended, defense counsel had also obtained from the judge an agreement that he would permit a mitigation hearing before sentence, at which time defendant might produce evidence, and if such evidence indicated that eight years was too severe, the sentence imposed might be less.

Shortly thereafter, defendant pleaded guilty to second degree rape and, after the mitigation hearing, Judge Shelley imposed sentence of seven years and nine months to eight years. Credit was ordered to be given for the four months defendant had already been in jail.

Defendant's attorney testified that immediately after the conference with the judge, he reported to his client. The attorney stated:

"A. I think it would be fair to say that I advised my client that, in fact, I did advise my client that I felt that if he entered a plea of guilty, the maximum minimum sentence that would be imposed would be eight years, would be not greater than eight years.

"Q. Did you ever discuss with Mr. Maxwell a maximum minimum sentence of five years?

\* \* \* \* \* \*

"A. Not from the Navajo County proceedings, no, except in my own opinion. I told Mr. Maxwell that, inasmuch as we would be permitted to go to a hearing in mitigation and aggravation, that, if we could show mitigating circumstances sufficient to sway the Court, that I felt we could reasonably anticipate a lighter sentence than eight years on the low side and that I would suggest to him that perhaps the sentence would be three years or five years.

"Q. And did you suggest that to him?

"A. I did, yes, but it was contingent upon—my representations were contingent at all times on the mitigation hearing being favorable."

The county attorney testified that the judge refused to consider a five year sentence.

Defendant testified that he would not have pleaded guilty had he known that the sentence would be eight years; that he had been offered a five year sentence more than one time by his attorney and had refused it; that he had been offered a maximum of five years by the county attorney in his office (which the county attorney denied); that after the judge had spent three hours with the attorneys working out the deal which he was offered, defendant was "scared to have taken a chance on going to court" and was afraid that the judge would then "throw a lot more time at me."

Judge Greer, who had the opportunity to observe the witnesses, tried to resolve this conflict in the facts by his findings. The findings pertinent to this issue which are not covered by the undisputed facts set out above are:

That there was no reporter present at any of the prior proceedings; *that defendant's attorney "may or may not have related to the defendant that he could receive a sentence of eight years, but that the defendant 'concluded' from the conference with Jenkins that he could expect three to five years in prison or probably probation."* (Finding No. 26); that after the conference with his lawyer, defendant acknowledged a willingness to change his plea to guilty; that "defendant did not fully expect the consequences of his plea of guilty at the time it was entered"; that there is no evidence that defendant was ever informed by anyone that if he rejected the arrangement concurred in by Judge Shelley a greater sentence would be imposed if he were to be found guilty after a trial; that "the defendant, at the time he changed his plea to guilty, believed that sufficient evidence in mitigation could be presented so that he might reasonably expect a sentence of not to exceed five years"; that "while the defendant may have believed that he might receive as much as five years or possibly probation, he did not believe he would

receive the punishment imposed by the trial court"; and that at no time did the county attorney promise leniency to defendant or promise to recommend any particular sentence prior to the conference with Judge Shelley.

Objections to the findings of fact were filed but after a reading of all of the testimony, we are convinced that there is ample evidence to support the positive findings.

While it is true that findings of fact which have support in the evidence will not be overturned on appeal, even though the evidence may be contradictory, if the trial court has not made a positive finding of any particular fact, we will then turn to the evidence to determine what the finding should be in that regard.

Here, Finding No. 26 reads as follows:

"That following the conference [with Jenkins, Judge Shelley and the county attorney] Jenkins *may or may not* have related to the Defendant that he could receive a sentence of eight years, but the Defendant concluded from the conference with Jenkins that he could expect three to five years in prison or probably probation." (Emphasis supplied.)

Judge Greer who held the Corum Nobis Hearing therefore did not find positively whether Jenkins told defendant that Judge Shelley had indicated he believed that a term not exceeding eight years would be proper under the circumstances as he understood them. Judge Shelley's testimony at the Corum Nobis Hearing in this regard was as follows:

"Q. Up until that aggravation-mitigation hearing, was your mind open as far as the possible range of sentence, from probation to the maximum minimum that had been discussed?

"A. Oh, if there—that would have had to depend on the evidence. If the evidence had indicated something that I wasn't aware of that happened to minimize the matter, I undoubtedly would have felt, to go lower had there been any-

thing in the aggravation-mitigation hearing that would have indicated to me that it ought to go lower."

Attorney Jenkins testified regarding his conference with Judge Shelley as follows:

"A. Did I make a proposal?

"Q. Yes.

"A. Yes, I did.

"Q. What was the proposal?

"A. That the Judge give me some indication of what I could hope for in the way of a maximum sentence.

"Q. And what did the judge say to you?

"A. He said that in these cases he couldn't see how a maximum minimum sentence of eight years would be unreasonable.

"Q. Was there ever a figure of five years discussed.

"A. Not with Judge Shelley.

"Q. Did you discuss anything else with regard to your client's plea, other than the possibility of an eight-year sentence?

"A. Yes.

"Q. What was that?

"A. I told him that we would want an opportunity to go to a mitigation-aggravation hearing to show circumstances that might justify probation or the imposition of a very light sentence."

"Q. And did the judge agree with that? In other words, agree to give you a mitigation hearing?

"A. He gave me the indication that that would be acceptable, yes."

On the other hand, the defendant himself at the Coram Nobis Hearing testified in answer to a question as to what Jenkins had told him regarding the conference with Judge Shelley as follows:

"A. Yes, sir, he came in and called me out back into those little offices and told me, I have got a much better deal for you, I think, better deal but the—I met with Mr. Taylor and Judge Shelley; I been in with them all morning, about three hours, he said, all morning I have been talking to him, with them; they are working out a deal; it's a very good deal and I think you better take it and—

"Q. What was it that he told you as the deal at that time?

"A. He said the deal was that, if—that he had asked for this mitigation hearing and if there was no violence showed, there would be no chance of me getting over five years and then the deal was straight that I would probably get three to five or I could get one to three or possibly probation.

*   *   *   *   *   *

"THE WITNESS: I felt that, in view of the fact that he had put three hours working on the case and he had known all about the case from the time that it was filed and then been in the investigation of, that I would have been scared to have taken a chance on going to court.

"Q. What were you afraid of, Herb?

"A. Well, I was afraid he would throw a lot more time at me."

There is obviously a conflict between the testimony of the defendant and the testimony of the Attorney Jenkins and Judge Shelley, regarding whether the defendant was advised that Judge Shelley had indicated that he thought a sentence of not to exceed eight years was proper under all the circumstances. We find from an examination of the entire record that Jenkins did advise the defendant of Judge Shelley's statement, and also indicated that because the Judge was willing to listen to a mitigation hearing, the attorney felt that he might be able to persuade the Judge to give the defendant a lesser sentence.

Plea bargaining is well recognized in the annals of criminal law. There have been numerous decisions discussing and approving this procedure. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; . McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; North

Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; State v. Jennings, 104 Ariz. 3, 448 P.2d 59.

Most of the difficulty lies in the fact that prior to Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 plea bargaining, while recognized, was more or less covert. The defendant was usually asked whether his plea had been induced by any threats or promises, to which his reply would be in the negative. This of course was in the face of his understanding that by pleading guilty he would receive some consideration in the matter of sentence or in the dismissal of other charges.

The Supreme Court of California in People v. West, 91 Cal.Rptr. 385, 477 P.2d 409 has indicated that in view of the Brady case, supra, that the basis of the bargain should be disclosed to the court and incorporated into the record. The court stated:

> "In view of the recent express approval of plea bargaining in Brady v. United States, supra, 397 U.S. 742, 90 S.Ct. 1463, [25 L.Ed.2d 747,] the justification for concealment of the bargain has disappeared; instead, the basis of the bargain should be disclosed to the court and incorporated in the record. We should exhume the process from stale obscurantism and let the fresh light of open analysis expose both the prior discussions and agreements of the parties, as well as the court's reasons for its resolution of the matter."

There are many ways in which this could be accomplished, suggestions being that the bargain could be stated orally and recorded by court reporters, or it could be set forth by the clerk in the minutes, or the parties might file a written stipulation stating the terms, or the court or counsel might themselves find it useful to prepare and utilize forms for the recording of plea bargains. There may be other methods also.

From the entire record in the case before us we conclude that the defendant entered his change of plea based upon the understanding that the Judge considered that a maximum minimum of eight years was about correct under all the circumstances, but that at a mitigation hearing the Judge would listen with an open mind to whatever was presented and that the attorney might be able to convince the Judge that there were extenuating circumstances which would persuade the latter to reduce the sentence probably three to five years or possibly to probation. We conclude that defendant's change of plea was entered intelligently, understandingly and voluntarily.

Under these circumstances we hold that the defendant's plea of guilty must stand. State v. Wheatley, 106 Ariz. 524, 479 P.2d 409. The relief prayed for is denied.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL, J., concur.

NOTE: Justice JAMES DUKE CAMERON did not participate in the determination of this matter.