THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* ROY COOK, Appellant.

(No. 69-53;

Fifth District—September 16, 1971.

Morton Zwick, Director of Defender Project, of Chicago, (Matthew J. Moran, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, (William R. Poston, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, Roy Cook, pleaded guilty in the circuit court of St. Clair County to the crime of murder and was sentenced to the penitentiary for a term of not less than 50 nor more than 75 years. On appeal here he contends that the trial court erred in entering final judgment on his guilty plea without first determining that there was a factual basis for the plea in contravention of Supreme Court Rule 402(c). (Ch. 110A, Sec. 402(c), Ill. Rev. Stat. 1969 Supp.) He also argues that on the basis of the testimony at his hearing in aggravation and mitigation the trial court should have recognized that he was under a misapprehension as to the facts and law involved and that the court on its own motion should have caused the guilty plea to be withdrawn.

Defendant's indictment consisted of four counts charging that on February 18, 1968, he committed murder, murder while attempting to commit a felony, aggravated battery and attempt to commit a burglary. He was arrested nine days after the crime and at his arraignment he pleaded not guilty. On February 17, 1969, accompanied by his privately retained attorney, he requested and was granted leave to change his plea to guilty as to the first count of murder and the other three counts were then dismissed. Admitting that the trial court's constitutional admonishments preceding acceptance of his plea were full and complete, defendant seems to base his appeal on the "factual basis" question arising solely from his own testimony at the hearing in aggravation and mitigation.

At this lengthy hearing it was determined that Louis Obernuefemann was shot and killed in the yard of his home when he returned and dis-

covered two men apparently trying to burglarize his house. Defendant testified that he had gone to the decedent's house with James Mullinix, not to burglarize it, but because Mullinix wanted to talk with the decedent concerning a union problem involving a charge that the decedent was engaging in scab carpenter work. When Mullinix started to pry open the back door defendant said he told him he did not want to get involved, but at that moment the decedent and his son drove up, so he and Mullinix jumped into the bushes to hide. Defendant stated that he then pulled out his gun, a Lama 380, cocked it and held it on his hip while in a prone position alongside his friend. He then said that the decedent approached the bushes with a shotgun and struck him across the nose with the butt end; that defendant's gun went off accidentally; that he then ran to his car and drove off. He stated he went to a tavern, hid his gun there, and then disposed of his car in a nearby lake. Later, after discarding his pants because they were powder burned, he went to Mullinix's house to inquire about him as he thought he may have killed Mullinix. In answer to a specific question if he knew he was pleading guilty to murder, defendant answered, "Yes, but it wasn't my gun that killed him. It wasn't the gun in my hands." He stated that the State claimed a .22 caliber bullet killed the decedent and that Mullinix had been carrying a .22 caliber gun and, in fact, had admitted to him that he had shot the decedent. In answer to further questions, defendant admitted that he could have fired his gun more than once and that he never told Mullinix about getting hit by the decedent.

James Mullinix testified that he and the defendant went to the decedent's house to burglarize it, having picked it out at random as it did not look as if anyone were home. He stated that he was a carpenter but that he held no union office, that he did not know the decedent and did not know whether he was a carpenter. While using a pry bar on the back door a car drove up and he and defendant jumped into the bushes. When decedent and his son approached the bushes he heard several shots, one going right by him at the boy, and he then ran and went back to his own house on foot. He stated that he was not armed, but that defendant had a .22 caliber automatic. Later, he said, defendant came to his house and told him that after driving around looking for him he had disposed of the car in a lake. He stated further than he did not notice anything unusual about defendant's nose or face and defendant did not say anything about it.

Decedent's 16-year-old-son testified that as they drove up to the house they noticed a strange car and being suspicious, his dad got a 6″ steel rod from the trunk. They then walked towards the back of the house

and two men jumped out from the bushes, one of them shooting. He was hit in the arm and the one who ran to the car and drove off was the man with the gun. Decedent's wife testified that her husband was an automobile mechanic, not a carpenter; that he did not have a shotgun; that she heard 4 or 5 shots and that the man who got in the car came from the side of the bush where the shots were fired. The other man ran off in a different direction.

At the conclusion of the testimony there was no request nor even an indication that defendant wished to withdraw his plea. He was specifically asked by the judge whether he had anything further to say before pronouncement of sentence and he replied in the negative. His attorney stated that in his opinion there were very few contradictions between defendant's story and that of the State's witnesses and urged merely that in imposing sentence the court should keep in mind the possibility of rehabilitation in view of the fact that defendant was a young man of 27 years of age with a wife and two children.

■ Defendant's first contention that the court's failure to determine a factual basis for his plea prior to its acceptance automatically necessitates a vacation of the plea is without merit. He cites *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, as authority for his argument interpreting Rule 11 of the Federal Rules of Criminal Procedure, which is almost identical with our Supreme Court Rule 402(c) relative to a determination of a factual basis for a plea, it was there held that such rule should be strictly construed and that failure to comply with it requires that the plea be vacated. Subsequently, however, it was held that this decision was not applicable retroactively, that only those defendants whose guilty pleas were accepted after April 2, 1969, the date of the McCarthy opinion, are entitled to plead anew if their pleas were accepted without full compliance with Rule 11. (*Halliday v. United States*, 394 U.S. 831, S.Ct. 1498.) We hold the same to be true in Illinois, for Supreme Court Rule 402(c) did not become effective until September 1, 1970, and defendant's plea herein was made and accepted on February 17, 1969. We therefore find that the rule is inapplicable in this case and defendant is not entitled to an automatic vacation of his plea.

■ Apparently in anticipation of this ruling defendant proceeds to a further argument that his plea cannot be said to have been entered knowingly and with full understanding in face of the fact that at the hearing three days later he actually denied that his presence on the scene was motivated by any criminal intent. We cannot accept this argument. It is purely self-serving, and, if recognized as valid, it would open a Pandora's box of never ending litigation affecting all guilty

pleas and subjecting them to doubt at the whim of the accused. A defendant has no absolute right to withdraw a plea of guilty. (*People v. Christman,* 128 Ill.App.2d 232.) Permission to do so rests in the sound discretion of the trial court to be granted when necessary to correct a manifest injustice based on the facts of the individual case. (*People v. McNair* (Agenda 71-25) (Ill.App.2d).) Nor is a subsequent statement of innocence sufficient of itself to require allowance of a motion to withdraw a guilty plea where a defendant has been properly and fully admonished prior to acceptance of his plea, for it is the obligation of the defendant to show that a court has violated its discretion in refusing to permit a withdrawal. (*People v. Walston,* 38 Ill.2d 39.) Here neither defendant nor his attorney saw fit even to request the trial court to withdraw his plea. It would appear that defendant's purpose at his hearing in aggravation and mitigation was merely an attempt to gloss over his involvement in the crime in an effort to persuade the court to impose a lighter sentence that he might have otherwise. We find that defendant's contention, made for the first time on appeal, is not well taken. It is clear that defendant was fully and properly admonished and that at the time he entered his plea he did so knowingly and with full understanding. It is likewise clear from his own testimony that he fired a number of shots, not just one accidentally, and that he disposed of his gun, his car and his pants; and he even reiterated that he knew he was pleading guilty to the murder of decedent. As stated in *North Carolina v. Alford,* 91 S.Ct. 160, an accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the acts constituting the crime, or even if his guilty plea contains a protestation of innocence, when he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt.

Under the circumstances of this case we can perceive of no reason why the ends of justice would be better served by vacating defendant's plea and allowing him to plead anew. The judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.