**UNITED STATES of America,**
**Plaintiff,**

*v.*

**Willie Charles GROCE, Defendant.**
**No. 4139.**

United States District Court,
W. D. Kentucky,
Bowling Green Division.

April 20, 1972.

---

George J. Long, U. S. Atty., by James H. Barr, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

Joe B. Campbell, Bowling Green, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

The record is before the court on the motion of the defendant, Willie Charles Groce, to invoke what he contends to be the requirements of Rule 32(d), Federal Rules of Criminal Procedure to correct and/or set aside the judgment of conviction and sentence. While the defendant in his motion cites 28 U.S.C.A. 2255, the motion was filed in the criminal case and may be considered in connection with the criminal case rather than to consider it an institution of a civil case under 28 U.S.C.A. 2255.

The sole question presented by this motion is whether the plea of guilty entered by the defendant in the presence of his attorney was accepted by the trial court in compliance with the standard or requirement set forth in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. The court is of the opinion that all requirements of the law were observed by the court and that the motion should be overruled.

The indictment, returned on November 9, 1970, consists of two counts. Count 1 charges that the defendant did by force, violence and intimidation, take from the person of two bank employees money belonging to and in the care, custody and control, management and possession of the Citizens National Bank at Russellville, Kentucky. Count 2 charges that this defendant on the same day did by force, violence and intimidation rob the bank of the money and while engaged in committing the action did put in jeopardy the life of two of the bank employees with the use of a dangerous weapon, to-wit, a sawed-off shotgun.

At the time the case was called, the defendant who was in the custody of the United States Marshal answered. He appeared to the court to be a man of mature years, good health and upon conversation with the court indicated that

he had in every sense an intelligent and understanding mind. There was nothing to indicate any timidity or stupidity or laxness in the functioning of his mental processes. The transcript on this occasion recites as follows:

"THE COURT: Your name is Willie Charles Groce?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have a copy of this indictment, Willie?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have a lawyer?

THE DEFENDANT: No sir.

THE COURT: Do you have money with which to employ one? The law provides if you do not have an attorney and do not have money with which to employ one, the Court will appoint one for you and I will do that if you want me to.

THE DEFENDANT: I would like for you to appoint me one, Your Honor, but I do have some money that was detained by the FBI and I was told by the Commissioner lady that today a decision would be made if that money would be refunded to me.

THE COURT: Well, I am goint to appoint an attorney to represent you. That is all the money you have, is that right?

THE DEFENDANT: Yes, sir.

THE COURT: I am goint to appoint an attorney to represent you and if later you should come into possession of this money, you can pay the attorney a reasonable fee to be credited on anything that he may be entitled to as an attorney of this court.

Mr. Campbell—

MR. CAMPBELL: Yes, Your Honor.
THE COURT: —I am going to appoint you to represent this young man.

Now, I want to state to you, Willie, in the presence of your attorney—you may talk to Mr. Campbell, he is a capable, young attorney of this bar—the offense with which you are charged is a serious offense, for which you may be sentenced to 20 years on the first count and a fine of $5,000, either or both, and 25 years on the second count and pay a fine of $10,000, either or both. I want to tell you this so that you can talk to your attorney about it.

He has a copy of the indictment, Mr. Campbell, and you can discuss it with him and I will call it up again."

On the following day the defendant and his attorney, Mr. Campbell, came before the court and the following occurred:

"THE COURT: Are you ready for arraignment?

MR. CAMPBELL: Yes, Your Honor, we are ready.

THE COURT: Now, I want to state to you, Willie, that the offense for which you are now being held and set forth in this indictment, as I believe I explained to you before, is a serious offense and calls for punishment which might be as much as 20 years in the penitentiary and a fine of $5,000 on the first count and 25 years and as much as $10,000 on the second count.

I think I explained that to you yesterday, didn't I?

THE DEFENDANT: Yes, sir.

THE COURT: (Reading Count 1 of the indictment to the defendant). Do you understand that charge against you, Willie?

THE DEFENDANT: Yes, sir.

THE COURT: Are you guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Plea of guilty.

Now, there is a second count in this indictment (reading Count 2 of the indictment to the defendant). Do you understand that charge against you, Willie?

THE DEFENDANT: Yes, sir.

THE COURT: Are you guilty or not guilty?

THE DEFENDANT: Guilty.

798

THE COURT: Plea of guilty to both counts.

(Reporter's note: A pre-sentence report was given to the Court by the probation officer.)

THE COURT: Now, Willie, do you or your attorney have anything you want to say before judgment of the Court is pronounced in you case, you or Mr. Campbell?

MR. CAMPBELL: No, Your Honor.

THE COURT: Do you care to make a recommendation, Mr. District Attorney?

MR. SMITH: Yes, Your Honor.

The facts of this case are that on October the 9th, at approximately 2 p. m. this defendant, having earlier hid in a back room of this bank in Russellville, grabbed Mr. H. O. Price, who was the chairman of the board of the Russellville Bank, and forced him by holding a sawed-off shotgun at his head, to accompany him as he robbed the Russellville Bank. He took $1,055 from Mrs. McPhearson and as the defendant tried to get more money two of the bank employees grabbed him, overwhelmed him and disarmed him in the bank and the police were called. Of course, the money was recovered there in the bank and it was $1,055.

At the time of the commission of the offense, Your Honor, the defendant was an escaped prisoner from the Indiana State Prison, where he was serving a life sentence for armed robbery.

As far as his prior record is concerned, we show that as a juvenile, in 1959, he was sentenced or found guilty as a juvenile on a charge of mail theft; and then in 1962 he was picked up as a probation violator and was released in 1964; then in 1967, Mr. Groce received this sentence of life for armed robbery.

It is the recommendation of the United States that Mr. Groce be sentenced to a term of 20 years on the second count of this indictment and we have

no objection to its running concurrent with his life sentence that he is presently serving.

THE COURT: On the second count?

MR. SMITH: Yes, sir. These counts merge together, Your Honor, upon a plea of guilty.

Don't these—

THE COURT: I don't think so. I think he is sentenced on each count.

MR. SMITH: Well, that is the way we do it in Louisville, Your Honor. Of course, we are in Bowling Green now. So it is my recommendation that he receive 20 years concurrently and we have no objection to it running concurrently with his life sentence.

THE COURT: Now, let him finish filling out that form there.

Just a minute. I want to read this report.

(Reporter's note: There was a pause in the proceedings while the Court read the probation officer's pre-sentence report.)

THE COURT: Now Willie, after hearing the statement of the United States Attorney, do you or your counsel desire to make any further statement before judgment is pronounced? Anything you want to say?

MR. CAMPBELL: No, Your Honor.

THE COURT: According to my information, Willie, you have a rather impressive criminal record. In 1957 you were before the juvenile court in Talladega, in Alabama, for check forgery; you were given probation on that charge and again in 1959 you were in the United States District Court at Birmingham, Alabama, for theft of mail and were placed on probation for five years. In 1962 you were before the court in Anniston, Alabama, Circuit Court, for grand larceny, receiving and concealing stolen property, and were given a year and a day and placed on probation. In 1962 you were before the court in Birming-

ham, a probationary violation, and your probation was revoked and you were sentenced to two years and five months for the balance of your sentence that had been originally given. In 1964 you were released, mandatory release, for 18 days of supervision.

Again, in 1964, you were before the court in Anderson, Indiana, on a disorderly conduct charge. No disposition is disclosed here in my report. In 1967 you were given a life sentence at Madison Circuit Court, Anderson, for armed robbery, and you escaped from Indiana State Prison, Michigan City, Indiana, on the 3rd day of October, this year.

Are those statements that I have given to you—is that correct, that record correct?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: It will be the judgment of the Court that this defendant be sentenced to 20 years on the first count of this indictment and 20 years on the second count of the indictment, those sentences to run concurrently."

It will be seen from this transcript that the conversation between the judge and the defendant in the presence of the United States Attorney and the defense counsel was cordial and understanding. The defendant, who was truly conversant with criminal courts, was given an opportunity on two occasions before he entered his plea of guilty and another opportunity after he entered his plea of guilty and after he had heard the statement and recommendation of the United States Attorney to make any requests for explanation or to inform the court of any promises or commitments which had been made to him. Yet he made none and made no claim that he was not clearly informed by the court of all rights which he had as an admitted bank robber about to be sentenced for his confessed crime carried out with the aid of a sawed-off shotgun. While it is not known just how long he remained in the town in which court was being held, it must be assumed that it was at least for several hours before he was taken to the federal penitentiary.

The sentencing was on November 10, 1970. He made no communication to the court and, so far as it is reflected by the whole record in this case, made no request of his attorney to do so. He made no communication to the United States Attorney's office. He made no communication or complaint at any time to anyone until he filed the present motion on March 14, 1972, a year, four months and four days after the sentencing, with the exception of four letters of dates January 6, 1971, January 28, 1971, April 1, 1971, and October 27, 1971, to the trial judge. All of these letters were answered promptly. In none of these letters did he make any suggestion or reference to any promise of a concurrent sentence.

■ In addition to what transpired in the courtroom as reflected by the transcript, the defendant in his motion on page 2 recites that counsel advised him that by pleading guilty the Assistant United States Attorney had informed him that he would recommend a 20 year sentence to run concurrently with his state life sentence. From this language it can be seen that he knew before he came before the court for arraignment that he might receive a 20 year sentence. This is a fact which should relieve anyone's mind of any suspicion whatsoever that the defendant was not fully advised of the seriousness of his case and of the likelihood of receiving a substantial sentence. His complaint that this sentence was not made to run concurrently with a sentence he was then serving in the Indiana State Penitentiary and that he was promised by his attorney that the Assistant United States Attorney had committed himself to that type of sentence cannot be accepted on any rationalization indicating a lack of understanding on his part. He was standing in the presence of the United States Attorney when the recommendation was made to the court. That was the time for him to make any objection or to ask any questions or to inform the judge that he had been promised a

concurrent sentence with his state penitentiary sentence. As the record has disclosed, he was not at that time serving his sentence in the Indiana State Penitentiary because he had escaped from the Indiana State Penitentiary. Under the authority of Edwards v. United States, 6 Cir., 422 F.2d 856, the court had no authority to make his sentence run concurrently with a state sentence which he was not then serving.

To sustain the motion of the defendant now is to state as a matter of law that this defendant, an apparently normal and intelligent person, had absolutely no responsibility for his own understanding and no obligation to call anything to the attention of the judge who was discussing the matter with him in a very cordial relation. As pointed out Groce has been in court to answer for various crimes on numerous occasions. He was represented by a capable and experienced attorney. In discussing the purport of Rule 11, Rules of Criminal Procedure, the Supreme Court in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, states that the Rule is designed to assist the district judge in making the constitutional determination that the defendant's guilty plea is truly voluntary and that at the time the plea is entered the record should clearly show that all factors relevant to the voluntariness are meticulously observed. The Supreme Court lays down the rule that the government has the burden of demonstrating from the record that the guilty plea was voluntarily entered with an understanding of the charge.

I believe it is appropriate to take into consideration the state of being of the defendant. Here, as I have stated repeatedly, we have an alert, capable, healthy, youngish man experienced in courtroom procedure. The crime for which he was accused was one of premeditation which he had thought out and made detailed preparations to commit. He used the most dangerous and deadly of all lethal weapons that are used in crimes of this kind, that is a sawed-off shotgun. This is not the weapon of a novice, but of an experienced and calculating criminal. He was caught in the act and, as he and all others know, has no defense to the charges contained in the indictment. In the McCarthy case the petitioner was 65 years old and in poor health at the time he entered his plea. He had been suffering from a serious drinking problem during the time he allegedly evaded his taxes. He pleaded guilty to a crime that requires a knowing and willful attempt to defraud the government; yet, during his sentencing hearing, he and his counsel insisted that his acts were "neglectful", "inadvertent" and committed without any disposition to deprive the United States of its due. As the Court stated, the nature of the offense and the type of person entering the plea might cast considerable doubt that the petitioner pleaded guilty with full awareness of the nature of the charge.

In the case of United States v. Sanders, 10 Cir., 435 F.2d 1282, it was developed that Sanders was an addict of long standing which might of itself cast some reflection upon his mental processes at the time of the entry of his guilty plea, at which time the judge made no reference whatever to the nature of the charge against Sanders as required by Rule 11, Rules of Criminal Procedure which was meticulously followed by the sentencing judge in the case at bar.

In the case of United States v. Cody, 8 Cir., 438 F.2d 287, it was contended by the defendant that the district judge only said that he assumed that counsel had explained the indictment to the defendant, that he had been over it with his attorney and that the defendant understood what he was charged with. While it is stated in the opinion that, "The substance of the indictment was read to the defendant", there is nothing to show that the indictment was read to him and explained to him in detail as was done in the case at bar. It is also shown from the opinion in the Cody case that the defendant had formerly entered a plea of not guilty. In a dissenting opinion of Circuit Judge Van Oosterhout, it was pointed put that under

Federal Rule of Criminal Procedure 32(d), a defendant has no right to withdraw his plea of guilty after sentence unless he can show a manifest injustice would result if such were not permitted. Sherburne v. United States, 8 Cir., 433 F.2d 1350, 1353; Meyer v. United States, 8 Cir., 424 F.2d 1181, 1190.

Also in the Cody case it should be pointed out that the charge was a violation of 18 U.S.C.A. §§ 922(a) (6) and 924(a) for making a false and fictitious statement to a licensed firearms dealer in order to buy a firearm. All trial judges are familiar with the relative technicalities of the various provisions of the National Firearms Act and some more detailed explanation might be justified than in a case of an armed bank robbery where the accused was actually caught and apprehended in the act.

Significant distinctions can be made between the instant case and all cases cited to the court on both the factual circumstances taking place in the presence of the court and on the matter of the offenses on which the various defendants in other cases were charged. This court prefers to follow the decision of the United States Court of Appeals for the Sixth Circuit in the case of Devlin v. United States, 440 F.2d 671. In that case, after the defendant had consulted with his attorney, he was addressed by the district judge in compliance with Rule 11. In answer to the judge's inquiries he disclosed his awareness of the maximum penalty he could receive and entered a plea of guilty. In the opinion the Sixth Circuit said, "The colloquy makes plain that his plea of guilty was the product of his own free will and desire, without any threats or promises being made; that he did steal the whiskey; and that he believed it to have been part of foreign commerce."

A careful reading of the record in this case can only lead to the conclusion that the defendant's effort in this motion is clearly unwarranted, frivolous and an afterthought. An order overruling the motion is this day entered.