## McCARTHY *v.* UNITED STATES.

No. 43.   Argued December 9, 1968.—Decided April 2, 1969.

*Maurice J. McCarthy* argued the cause for petitioner. With him on the briefs were *Barnabas F. Sears* and *Wayland B. Cedarquist.*

*James Van R. Springer* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Rogovin, Francis X. Beytagh, Jr., Beatrice Rosenberg,* and *Mervyn Hamburg.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case involves the procedure that must be followed under Rule 11 of the Federal Rules of Criminal Procedure before a United States District Court may accept a guilty plea and the remedy for a failure to follow that procedure.

On April 1, 1966, petitioner was indicted on three counts in the United States District Court for the Northern District of Illinois for violating § 7201 of the Internal Revenue Code. He was charged with "wilfully and knowingly" attempting to evade tax payments of $928.74 for 1959 (count 1), $5,143.70 for 1960 (count 2), and $1,207.12 for 1961 (count 3). At his arraignment

two weeks later, petitioner, who was represented by retained counsel, pleaded not guilty to each count. The court scheduled his trial for June 30; but on June 29, it granted the Government's motion to postpone the trial because of petitioner's illness. The trial was rescheduled for July 15.

On that day, after informing the court that he had "advised . . . [petitioner] of the consequences of a plea," defense counsel moved to withdraw petitioner's plea of not guilty to count 2 and to enter a plea of guilty to that count. The District Judge asked petitioner if he desired to plead guilty and if he understood that such a plea waived his right to a jury trial and subjected him to imprisonment for as long as five years and to a fine as high as $10,000. Petitioner stated that he understood these consequences and wanted to plead guilty. The Government consented to this plea change and informed the court that if petitioner's plea of guilty to count 2 were accepted, the Government would move to dismiss counts 1 and 3. Before the plea was accepted, however, the prosecutor asked the judge to inquire whether it had been induced by any threats or promises. In response to the judge's inquiry, petitioner replied that his plea was not the product of either. He stated that it was entered of his "own volition." The court ordered a presentence investigation and continued the case to September 14, 1966.[1]

At the commencement of the sentencing hearing on September 14, petitioner asserted that his failure to pay taxes was "not deliberate" and that they would have been paid if he had not been in poor health. The prosecutor stated that the "prime consideration" for the Government's agreement to move to dismiss counts 1 and 3 was petitioner's promise to pay all taxes, penalties, and

---

[1] The relevant portion of the colloquy at this hearing is quoted in Appendix A.

interest. The prosecutor then requested the court to refer expressly to this agreement. After noting that petitioner possessed sufficient attachable assets to meet these obligations, the court imposed a sentence of one year and a fine of $2,500. Petitioner's counsel immediately moved to suspend the sentence. He emphasized that petitioner, who was then 65 years of age, was in poor health and contended that his failure to pay his taxes had resulted from his "neglectful" and "inadvertent" method of bookkeeping during a period when he had been suffering from a very serious drinking problem. Consequently, asserted petitioner's counsel, "there was never any disposition to deprive the United States of its due." The judge, however, after indicating he had examined the presentence report, stated his opinion that "the manner in which [petitioner's] books were kept was not inadvertent." He declined, therefore, to suspend petitioner's sentence.[2]

On appeal to the United States Court of Appeals for the Seventh Circuit, petitioner argued that his plea should be set aside because it had been accepted in violation of Rule 11 of the Federal Rules of Criminal Procedure. Specifically, petitioner contended (1) that the District Court had accepted his plea "without first addressing [him] . . . personally and determining that the plea [was] . . . made voluntarily with understanding of the nature of the charge . . . ,"[3] and (2) that the court had entered judgment without determining "that there [was] . . . a factual basis for the plea."[4]

---

[2] Defense counsel's account of petitioner's personal problems during the period he allegedly evaded his income taxes is quoted in Appendix B.

[3] Fed. Rule Crim. Proc. 11.

[4] *Ibid.* Both of these provisions were added by the 1966 amendment to Rule 11. The amendment became effective on July 1, 1966. It is italicized on the next page in the following quotation of the Rule:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea

In affirming petitioner's conviction,[5] the Court of Appeals held that the District Judge had complied with Rule 11. The court implied that the Rule did not *require* the District Judge to address petitioner personally to determine if he understood the nature of the charge. The court also concluded that the colloquy at the sentencing hearing demonstrated that the judge had satisfied himself by an examination of the presentence report that the plea had a factual basis.[6]

Because of the importance of the proper construction of Rule 11 to the administration of criminal law in the federal courts,[7] and because of a conflict in the courts of appeals over the effect of a district court's failure to follow the provisions of the Rule,[8] we granted certiorari. 390 U. S. 1038 (1968). We agree with petitioner that the District Judge did not comply with Rule 11 in this case; and in reversing the Court of Appeals, we hold that a defendant is entitled to plead anew if a United

---

of guilty, and shall not accept *such* plea *or a plea of nolo contendere* without first *addressing the defendant personally and* determining that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.* If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. *The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."*

[5] 387 F. 2d 838 (C. A. 7th Cir. 1968).

[6] The Advisory Committee suggests three methods of determining that a factual basis exists for a guilty plea: (1) inquiring of the defendant; (2) inquiring of the prosecutor; (3) examining the presentence report. Fed. Rule Crim. Proc. 11, Notes of Advisory Committee on Criminal Rules.

[7] During 1968 approximately 86% (22,055 out of 25,674) of all convictions obtained in the United States district courts were pursuant to a plea of guilty or its substantial equivalent, a plea of *nolo contendere.* 1968 Director of the Administrative Office of the United States Courts Ann. Rep. 261.

[8] See nn. 22 and 23, *infra.*

States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11. This decision is based solely upon our construction of Rule 11 and is made pursuant to our supervisory power over the lower federal courts; we do not reach any of the constitutional arguments petitioner urges as additional grounds for reversal.

I.

Rule 11 expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea. At oral argument, however, counsel for the Government repeatedly conceded that the judge did not personally inquire whether petitioner understood the nature of the charge. At one point, counsel stated quite explicitly: "The subject on which he [the District Judge] did not directly address the defendant, which is raised here, is the question of the defendant's understanding of the charges." Nevertheless, the Government argues that since petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the District Court "could properly *assume* that petitioner was entering that plea with a complete understanding of the charge against him." [9] (Emphasis added.)

---

[9] The Government agrees with the Court of Appeals that the record of the September 14 sentencing hearing demonstrates that the District Judge satisfied himself by examining the presentence report that there was a factual basis for the plea. However, because of the Government's concession at oral argument that the judge did not inquire whether petitioner understood the nature of the charge, and because of our holding that any noncompliance with Rule 11 is reversible error, we need not consider the Government's contention that the record adequately supports the Court of Appeals' conclusion that the district judge satisfied himself that there was a factual basis for the plea.

We cannot accept this argument, which completely ignores the two purposes of Rule 11 and the reasons for its recent amendment. First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated,[10] it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.[11] Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous postconviction attacks on the constitutional validity of guilty pleas.[12]

Prior to the 1966 amendment, however, not all district judges personally interrogated defendants before accepting their guilty pleas.[13] With an awareness of the confusion over the Rule's requirements in this respect, the draftsmen amended it to add a provision "expressly

---

[10] See *Waddy* v. *Heer*, 383 F. 2d 789 (C. A. 6th Cir. 1967).

[11] See, *e. g., Machibroda* v. *United States*, 368 U. S. 487, 493 (1962); *Von Moltke* v. *Gillies*, 332 U. S. 708 (1948); *Waley* v. *Johnston*, 316 U. S. 101 (1942).

[12] See *Stephens* v. *United States*, 376 F. 2d 23 (C. A. 10th Cir.), cert. denied, 389 U. S. 881 (1967); *Rimanich* v. *United States*, 357 F. 2d 537 (C. A. 5th Cir. 1966); *Kadwell* v. *United States*, 315 F. 2d 667, 669 n. 6 (C. A. 9th Cir. 1963); Orfield, Pleas in Federal Criminal Procedure, 35 Notre Dame Law. 1, 31–32 (1959).

Chief Judge Walter E. Hoffman of the United States District Court for the Eastern District of Virginia has stated that "[t]he multitude of questions presented by the arraignment and plea under Rules 10 and 11 furnish the most frequent basis for attack in the popular post-conviction remedy available to federal prisoners." Hoffman, What Next in Federal Criminal Rules?, 21 Wash. & Lee L. Rev. 1, 8 (1964).

[13] See Fed. Rule Crim. Proc. 11, Notes of Advisory Committee on Criminal Rules.

requir[ing] the court to address the defendant personally." [14]   This clarification of the judge's responsibilities quite obviously furthers both of the Rule's purposes. By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack.

These two purposes have their genesis in the nature of a guilty plea.   A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.[15]   For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938).   Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.[16]   Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.[17]

---

[14] *Ibid.*

[15] See L. Orfield, Criminal Procedure Under the Federal Rules § 11:12 (1966); A. Enker, Perspectives on Plea Bargaining, President's Comm'n on Law Enforcement and Administration of Justice, Task Force Report: The Courts, Appendix A, 116 (1967); Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U. Pa. L. Rev. 865, 871–872 (1964).

[16] See n. 11, *supra.*

[17] See D. Newman, Conviction, The Determination of Guilt or Innocence Without Trial 23 (1966); ABA Project on Minimum Standards for Criminal Justice: Standards Relating to Pleas of Guilty § 1.4 (a), commentary (Tent. Draft 1967).

Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty."[18] Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."[19]

To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the district judge resorts to "assumptions" not based upon recorded responses to his inquiries. For this reason, we reject the Government's contention that Rule 11 can be complied with although the district judge does not personally inquire whether the defendant understood the nature of the charge.[20]

---

[18] Fed. Rule Crim. Proc. 11, Notes of Advisory Committee on Criminal Rules.

[19] *Ibid.*

[20] The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself. As our discussion of the facts in this particular case suggests, however, where the charge encompasses lesser included offenses, per-

## II.

Having decided that the Rule has not been complied with, we must also determine the effect of that non-compliance, an issue that has engendered a sharp difference of opinion among the courts of appeals. In *Heiden* v. *United States,* 353 F. 2d 53 (1965), the Court of Appeals for the Ninth Circuit held that when the district court does not comply fully with Rule 11 the defendant's guilty plea must be set aside and his case remanded for another hearing at which he may plead anew.[21] Other courts of appeals, however, have consistently rejected this holding, either expressly [22] or tacitly.[23] Instead, they have adopted the approach

---

sonally addressing the defendant as to his understanding of the essential elements of the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge. In all such inquiries, "[m]atters of reality, and not mere ritual, should be controlling." *Kennedy* v. *United States,* 397 F. 2d 16, 17 (C. A. 6th Cir. 1968).

[21] After two separate panels had applied *Heiden* retroactively without discussion in *Geter* v. *United States,* 353 F. 2d 208 (1965), and *Freeman* v. *United States,* 350 F. 2d 940, 943 (1965), in a subsequent *en banc* decision the Ninth Circuit held that it would not apply *Heiden* to cases in which the guilty plea was accepted before the date on which *Heiden* was decided. *Castro* v. *United States,* 396 F. 2d 345 (C. A. 9th Cir. 1968).

[22] *Kennedy* v. *United States,* 397 F. 2d 16 (C. A. 6th Cir. 1968); *Halliday* v. *United States,* 380 F. 2d 270 (C. A. 1st Cir. 1967) ("at least with respect to [pre-amended] Rule 11"); *Stephens* v. *United States,* 376 F. 2d 23 (C. A. 10th Cir.), cert. denied, 389 U. S. 881 (1967); *Brokaw* v. *United States,* 368 F. 2d 508 (C. A. 4th Cir. 1966), cert. denied, 386 U. S. 996 (1967) (at least where the defendant raises only the factual issues of voluntariness).

[23] *United States* v. *Del Piano,* 386 F. 2d 436 (C. A. 3d Cir. 1967), cert. denied, 392 U. S. 936 (1968); *Lane* v. *United States,* 373 F. 2d 570 (C. A. 5th Cir. 1967); *United States* v. *Kincaid,* 362 F. 2d 939 (C. A. 4th Cir. 1966); *Bartlett* v. *United States,* 354 F. 2d 745 (C. A. 8th Cir. 1966).

urged by the Government, which is to place upon the Government the burden of demonstrating from the record of the Rule 11 hearing that the guilty plea was voluntarily entered with an understanding of the charge. See, *e. g., Halliday* v. *United States,* 380 F. 2d 270 (C. A. 1st Cir. 1967); *Lane* v. *United States,* 373 F. 2d 570 (C. A. 5th Cir. 1967).[24] In these circuits, if voluntariness cannot be determined from the record, the case is remanded for an evidentiary hearing on that issue. See, *e. g., Kennedy* v. *United States,* 397 F. 2d 16 (C. A. 6th Cir. 1968); *Halliday* v. *United States, supra.*

We are persuaded that the Court of Appeals for the Ninth Circuit has adopted the better rule. From the defendant's perspective, the efficacy of shifting the burden of proof to the Government at a later voluntariness hearing is questionable. In meeting its burden, the Government will undoubtedly rely upon the defendant's statement that he desired to plead guilty and frequently a statement that the plea was not induced by any threats or promises. This prima facie case for voluntariness is likely to be treated as irrebuttable in cases such as this one, where the defendant's reply is limited to his own plaintive allegations that he did not understand the nature of the charge and therefore failed to assert a valid defense or to limit his guilty plea only to a lesser included offense. No matter how true these allegations may be, rarely, if ever, can a defendant corroborate them in a post-plea voluntariness hearing.

Rule 11 is designed to eliminate any need to resort to a later fact-finding proceeding "in this highly subjective area." *Heiden* v. *United States, supra,* at 55. The Rule "contemplates that disputes as to the understanding of the defendant and the voluntariness of his

---

[24] See 8 J. Moore, Federal Practice ¶ 11.03 [1], at 11–22 (2d ed. 1968). But see *United States* v. *Pate,* 357 F. 2d 911 (C. A. 7th Cir. 1966).

action are to be eliminated at the outset . . . ." *Ibid.* As the Court of Appeals for the Sixth Circuit explained in discussing what it termed the "persuasive rationale" of *Heiden:* "When the ascertainment is subsequently made, greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided . . . ." *Waddy* v. *Heer,* 383 F. 2d 789, 794 (1967). There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him.

The wisdom of Rule 11's requirements and the difficulty of achieving its purposes through a post-conviction voluntariness hearing are particularly apparent in this case. Petitioner, who was 65 years old and in poor health at the time he entered his plea, had been suffering from a serious drinking problem during the time he allegedly evaded his taxes. He pleaded guilty to a crime that requires a "knowing and willful" attempt to defraud the Government of its tax money; [25] yet, throughout his sentencing hearing, he and his counsel insisted that his acts were merely "neglectful," "inadvertent," and committed without "any disposition to deprive the United States of its due." Remarks of this nature cast considerable doubt on the Government's assertion that petitioner pleaded guilty with full awareness of the nature of the charge. Nevertheless, confronted with petitioner's statement that he entered his plea of his "own volition," his counsel's statement that he explained the nature of the charges, and evidence that petitioner did owe the Government back taxes, both the District Court and the Court of Appeals concluded that petitioner's guilty plea was voluntary.

Despite petitioner's inability to convince the courts below that he did not fully understand the charge against

---

[25] *Sansone* v. *United States,* 380 U. S. 343 (1965).

him, it is certainly conceivable that he may have intended to acknowledge only that he in fact owed the Government the money it claimed without necessarily admitting that he committed the crime charged; for that crime requires the very type of specific intent that he repeatedly disavowed. See *Sansone* v. *United States*, 380 U. S. 343 (1965). Moreover, since the elements of the offense were not explained to petitioner, and since the specific acts of tax evasion do not appear of record, it is also possible that if petitioner had been adequately informed he would have concluded that he was actually guilty of one of two closely related lesser included offenses, which are mere misdemeanors.[26]

On the other hand, had the District Court scrupulously complied with Rule 11, there would be no need for such speculation. At the time the plea was entered, petitioner's own replies to the court's inquiries might well have attested to his understanding of the essential elements of the crime charged, including the requirement of specific intent, and to his knowledge of the acts which formed the basis for the charge. Otherwise, it would be apparent to the court that the plea could not be accepted. Similarly, it follows that, if the record had been developed properly, and if it demonstrated that petitioner entered his plea freely and intelligently, his subsequent references to neglect and inadvertence could have been summarily dismissed as nothing more than overzealous supplications for leniency.

We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are

---

[26] Willfully filing a fraudulent or false return is a misdemeanor under § 7207 of the Internal Revenue Code, and willfully failing to pay taxes is a misdemeanor under § 7203 of the Code. The close interrelationship between these two offenses and the felony for which petitioner was convicted under § 7201 is explained in detail in *Sansone*.

designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

We therefore reverse the judgment of the Court of Appeals for the Seventh Circuit and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX A TO OPINION OF THE COURT.

The relevant portion of the colloquy at the Rule 11 hearing on July 15 is as follows:

"Mr. Sokol [petitioner's counsel]: . . . If the Court please, I have advised Mr. McCarthy of the consequences of a plea. At this time, in his behalf I would like to withdraw the plea of not guilty heretofore entered to Count 2, and enter a plea of guilty to Count 2. There are three Counts.

"The Court: Is that satisfactory to the government?

"Mr. Hughes [Government counsel]: Satisfactory to the government, your Honor. The government will move to dismiss Counts 1 and 3.

"The Court: There will be a disposition in regard to the other Count?

"Mr. Sokol: He has just moved to dismiss Counts 1 and 3.

"The Court: Not until the plea is accepted and there is a judgment thereon.

"Mr. Hughes: Correct.

"The Court: This is tax evasion, five and ten?

"Mr. Hughes: Yes, your Honor, a maximum penalty of five years and $10,000.

"The Court: Mr. McCarthy, your lawyer tells me that you want to enter a plea of guilty to this second Count of this indictment; is that true?

"Defendant McCarthy: Yes, your Honor.

"The Court: You understand on your plea of guilty to the second Count of this indictment, you are waiving your right to a jury trial?

"Defendant McCarthy: Yes, your Honor.

"The Court: You understand on your plea of guilty you may be incarcerated for a term not to exceed five years?

"Defendant McCarthy: Yes, your Honor.

"The Court: You understand you may be fined in an amount not in excess of $10,000?

"Defendant McCarthy: Yes, your Honor.

"The Court: Knowing all that, you still persist in your plea of guilty?

"Defendant McCarthy: Yes, your Honor.

"The Court: The record will show that this defendant, after being advised of the consequences of his plea to Count 2 of this indictment, persists in his plea. The plea will be accepted. There will be a finding of guilty in the manner and form as charged in Count 2 of this indictment, judgment on that finding.

"Now, in regard to Counts 1 and 3?

"Mr. Hughes: Your Honor, the government will move to dismiss them. I would also request the Court to ask whether or not any promises or threats have been made.

"Mr. Sokol: No, no promises or threats.

"The Court: I am going to ask the defendant himself. Have any promises been made to you for entering a plea of guilty?

"Defendant McCarthy: No, your Honor.

"The Court: Has anybody threatened you that if you didn't enter a plea of guilty something would happen to you?

"Defendant McCarthy: I beg your pardon?

"The Court: Has anybody threatened you to enter a plea of guilty?

"Defendant McCarthy: That's right, of my own volition, your Honor.

"The Court: All right. Enter a pre-trial investigation order and continue the matter until the 14th day of September. Same bond may stand."

## APPENDIX B TO OPINION OF THE COURT.

The colloquy at the September 14 sentencing hearing included the following:

"Mr. Sokol [petitioner's counsel]: . . . If the Court please, apart from the wrecking of his physical health that has attended a number of the problems that relate to the drinking in this case, this man has experienced a kind of punishment, self-inflicted, which almost is a categorical listing of how he flees, actually, and I use that word advisedly, flees from consequence to punishment to additional consequence. It is a sad thing when at the age of sixty-five a man who has been able to rear, with the help of his wife, a fine family, has to leave a legacy such as this. I submit to the Court that he needs

no deterrent. I cannot imagine a man—apart from the conventional contrition, he has actively sought out help in order to overcome what has become a very, very serious physical and psychological problem.

"When I spoke with Mr. Sanculius [the probation officer], I knew that we had given to him some reference to the fact and some attestations of the facts, supported the facts, that there had been a very, very serious psychological problem here.

"With respect to the tax case itself, he never took one single step to delude the investigating officer from the very, very start, and this was before Counsel was in the matter. He extended—in other words, he was open and he answered all questions readily.

"The Court: Yes, but his books were in such shape that it made it very difficult to—and that, in my opinion, was not inadvertent.

.        .        .        .        .

"Mr. Sokol: . . . When a man is neglectful and adopts a kind of a devious way of secreting himself from the government, that is one thing, and we are mindful they are kind of indicia of fraud. But where a man's pattern is neglect of not only something like this—he is sloppy with respect to that, but in gross, in gross, unaccountable, so to speak.

"There was no direct relationship to the consesquences of taxation. Now, I would like to point out in that connection that when the investigation commenced it zeroed in, and very, very properly, there was a disclosure made from the very, very first that in the case of the Blue Cross check, the matter of depositing that in a second account actually had absolutely nothing whatever to do with the government. At that time he had been very, very deeply involved in a protracted drinking situation

and had been in the hospital for several weeks. His family, in order to avoid the matter of him really needing somebody to lead him around by the nose said, and his wife said, 'You have to put yourself under the jurisdiction of your brother,' and there was some indication that he was supposed to deposit this and he would not have disposition over his own assets. They did not feel that he could look out for himself. He was oppressed, and there is no sense in going over how people become so. In this particular case with a history after sixty-five years of this kind of a situation, one can perhaps guess without going into Freudian terms he was oppressed, and in order to free himself—and this had nothing to do with the government—in order to free himself from what he felt was a trap situation where he, at the age of sixty-two or sixty-three was being treated like a little boy, he put it in a different bank account. But there was never any disposition to deprive the United States of its due.

"He has never acted, actually, in what you would call normal consequence, because an interview with this man, even once, indicates that if he has—and it is like a little boy—if he has the consequence lying before him he says, 'Oh, yes.'

.　　　.　　　.　　　.　　　.

"Mr. Sokol: He did not act in contemplation of avoiding taxation. That was a natural consequence of what can best be described as gross neglect, and criminal neglect, if you please.

"I could not have, in good conscience, recommended that he go into a plea if I did not feel that neglect has become criminal when it reaches a certain stage. But this was not a part of any elaborate scheme or any devious course of conduct where he was acting in contemplation of a tax return that—

"The Court: It took place over a series of four years, didn't it, Counsel?

"Mr. Sokol: No, your Honor, because the real problem related to the matter of his avoiding the accountability not to his government but to the matter of the spending money.

"The Court: Well, I am sure that if the government had not stepped in, why, it would have lasted over a period of eight years.

"Mr. Sokol: No, he had already done this, apart from the fact that he had sought help with respect to the drinking, apart from the fact that he had sought help with respect to the psychiatric problem, and apart from the fact that he had already, so to speak, contained himself, he did, in addition, seek out the help of Mr. Abraham Angram, my associate counsel in the case, who was guiding him and he was on the right path. No, he had—I want to point out to the Court that this has occurred. This is fait accompli."

MR. JUSTICE BLACK, concurring.

I concur, though not without some doubt, in the reversal of the judgment of conviction in this case. Rule 11 of the Federal Rules of Criminal Procedure requires that the trial judge personally address a defendant who pleads guilty in order to ascertain if he understands the nature of the crime of which he has pleaded guilty. In this case the trial judge did not personally address the defendant but seems to have accepted the statement of the defendant's lawyer that he had advised the petitioner of the consequences of a plea of guilty. I base my concurrence in the judgment not upon any "supervisory power" of this Court, however, but exclusively on the failure of the judge to first address the defendant personally, as required by Rule 11.