**UNITED STATES of America ex rel.
Edward K. MURPHY, Petitioner,**

v.

**Norman CARLSON, Director, Bureau of
Prisons, Department of Justice,
Respondent.**

**Civ. A. No. 74–2045.**

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1975.

2. *See* Simon v. Moseley, 452 F.2d 306, 309 (10th Cir. 1971); *cf.* Nash v. Moseley, 433 F.2d 923 (10th Cir. 1970).

**670**

Gene D. Cohen, Philadelphia, Pa., for petitioner.

James H. Manning, Jr., Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is Edward Murphy's petition pursuant to 28 U.S.C. § 2255, seeking relief from a sentence imposed by this Court on October 18, 1973. A hearing was held January 16, 1975. After carefully considering the evidence and the arguments presented by the petitioner and the Government, the Court has determined that it must deny the requested relief.

On September 5, 1973, the petitioner entered a plea of guilty before this Court to a one count indictment charging him with knowingly and intentionally distributing 3.49 grams of heroin in violation of 21 U.S.C. § 841. On October 18, 1973, the petitioner was sentenced by this Court pursuant to 21 U. S.C. § 841(b)(1)(A) to a five year term of imprisonment which included an additional three year mandatory parole period. At the time that sentence was imposed the petitioner was being held in state custody awaiting trial on an unrelated state indictment charging first degree murder. On July 21, 1974, nine months after this Court imposed sentence, the petitioner received a state sentence of four to ten years after he had entered a plea of guilty to murder in the second degree. The petitioner's state sentence began running on April 12, 1973, the date on which he was incarcerated on the state charge. The petitioner was then transferred to Graterford Prison to serve his state sentence. Petitioner claims that when he arrived at Graterford he first learned that he had a Federal detainer lodged against him as a result of the Federal sentence imposed by this Court, and that his Federal and state sentences were not being served concurrently. On August 8, 1974, Mr. Murphy filed the § 2255 petition which is currently before this Court.

Petitioner contends that he was coerced into pleading guilty before this Court as the result of an agreement between himself and his court-appointed counsel, David A. Garfunkel, Esq. Petitioner testified that he was advised by Mr. Garfunkel that a petition for a reconsideration of this Court's sentence would be filed subsequent to the disposition of the state charges. Petitioner argues that he would not have pleaded guilty before this Court had he not believed that Mr. Garfunkel would file a petition for reconsideration on his behalf and that since Mr. Garfunkel did not comply with the agreement arrived at between them, his plea was coerced.

Petitioner apparently seeks only to have this Court reconsider its sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.[1] However, because 120 days have elapsed since Mr. Murphy was sentenced, we are without jurisdiction to reconsider petitioner's sentence under Rule 35. United States v. Robinson, 457 F.2d 1319 (3

---

1. Rule 35 of the Federal Rules of Criminal Procedure provides in relevant part:

 The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed . . . ..

Cir. 1972). The Court has therefore considered this petition as one by which the petitioner seeks to have his judgment of guilty vacated as not being in conformity with Rule 11 of the Federal Rules of Criminal Procedure.

The petitioner testified that at the time he was arrested on the Federal charge and David Garfunkel, Esq. was appointed by the Court to represent him, he was being held in the Philadelphia Detention Center awaiting trial for first degree murder. Petitioner stated that during the first discussion between himself and Mr. Garfunkel, he did not want to plead guilty and so informed his counsel. The petitioner then testified that as a result of subsequent meetings between himself and Mr. Garfunkel, he determined that the best course to follow was to enter a plea of guilty to the Federal charge. However, the petitioner insists that when it was finally agreed that he should enter a guilty plea it was on the condition that Mr. Garfunkel would at some later date submit a petition for the reconsideration of whatever sentence this Court imposed. Petitioner testified that he never received any promise from the Government other than that it would recommend a sentence of not more than five years imprisonment. He also testified that no one made any promises to him that this Court would subsequently reduce its sentence or change it to run concurrently with whatever state sentence might subsequently be imposed. Petitioner further testified that he did not expect to receive a sentence from this Court which would run concurrently with any state sentence he might subsequently receive. The petitioner testified that after arriving at Graterford Prison to serve the subsequently imposed state sentence of four to ten years, he first learned that he could not commence serving his Federal sentence until he had completed his state sentence. On June 18, 1974, the petitioner wrote to this Court concerning the possibility of a reconsideration of his sentence and was informed that the 120 day period, within which to so

petition, had elapsed. Petitioner testified that he then contacted Mr. Garfunkel concerning his petition for a reconsideration of sentence and Mr. Garfunkel informed him that the 120 day rule precluded a petition for the reconsideration of sentence. Mr. Murphy then filed the petition which is currently before this Court.

The testimony of Mr. Garfunkel differed in several respects from that of the petitioner. Mr. Garfunkel stated that he had extensive discussions with the petitioner concerning the problems inherent in his being involved in a Federal case while being held in state custody awaiting trial. He testified that he told the petitioner that if he was sentenced by this Court and was subsequently sentenced by the state court he would then possibly be in a position to petition this Court for a reconsideration of the Federal sentence and seek to have the Court reconsider its sentence to have it run concurrently with the state sentence. However, Mr. Garfunkel testified that at the time he made this statement to the petitioner, he was led to believe by Mr. Murphy that the state court case, in which he was not represented by Mr. Garfunkel, would terminate in an acquittal or, in any event, would be resolved within a short period of time. Mr. Garfunkel could not recall whether he specifically mentioned the 120 day period provided in Rule 35 of the Federal Rules of Criminal Procedure, but he did testify that his agreement to file a petition for reconsideration of this Court's sentence was specifically conditioned upon the disposition of the murder charge in the state case. In essence, Mr. Garfunkel testified that the understanding he had with the petitioner was that the petitioner should contact him immediately after he was sentenced in the state court and it would then be determined whether a petition should be filed with this Court for a reconsideration of sentence.

The Court has determined that the testimony of Mr. Garfunkel is credible and conforms to a reasoned

evaluation of the petitioner's situation. Mr. Garfunkel is an experienced and competent member of the criminal bar of this Court. He is thoroughly familiar with its procedures. At the time the petitioner received his Federal sentence there was no state sentence imposed on the murder charge in the state court. This Court, therefore, could not have recommended that its sentence run concurrently with the state court sentence.[2] Thus, it is not believable that Mr. Garfunkel would have led the petitioner to feel that he would file for a reconsideration of this Court's sentence at any time prior to the imposition of the state sentence.

 Even if we were to find that Mr. Garfunkel agreed to petition for a reconsideration of this Court's sentence as a condition to the petitioner agreeing to enter a plea of guilty, we cannot see how this would make the entry of that plea involuntary or coerced. At the change of plea proceeding before this Court, the petitioner was made aware of the nature of the charges against him (N.T. 8, 12),[3] the maximum sentence that could be imposed (N.T. 10),[4] that a mandatory special parole term would follow any term of imprisonment (N.T. 10),[5] the factual basis on which he was pleading guilty (N.T. 8),[6] any promises made to the petitioner (N.T. 7),[7] that the practice of plea bargaining was acceptable (N.T. 7),[8] and the constitutional rights he was relinquishing by entering a plea of guilty (N.T. 5).[9] The Court also made a finding that the entry of the guilty plea was voluntary and an intelligent and understanding choice from among the alternatives then facing the petitioner (N.T. 13).[10]

With respect to the promises made to the petitioner, the following exchange occurred:

THE COURT: Now has anybody threatened you or coerced you to come in here and change your plea today?

THE DEFENDANT: No, they haven't.

THE COURT: Has anybody made any promises or is there any agreement—

MR. GARFUNKEL: Yes.

THE COURT: If there is let's put it on the record.

MR. GARFUNKEL: Your Honor, the agreement is as follows:

The Government has agreed to recommend a period of incarceration of no more than five years. I have advised my client, Mr. Murphy, of that fact.

I have further advised him that the Court is not bound by that agreement, but that under the ABA plea-bargaining standards if the Court should determine that five years was less than an appropriate amount he would be given the opportunity by Your Honor to withdraw his guilty plea and proceed on a plea of not guilty and proceed to trial.

MR. MANNING: That is substantially correct.

THE COURT: Yes, and I might add that if I find that the sentence should be in excess of five years I will

---

2. Even if there had been a state sentence imposed at the time the petitioner was sentenced by this Court, the Court could only *recommend* that the Federal sentence run concurrently with existing state sentence. United States v. Meyers, 451 F.2d 402 (9th Cir. 1972); 18 U.S.C. § 4082(a).

3. Woodward v. United States, 426 F.2d 959 (3d Cir. 1970).

4. Kelsey v. United States, 484 F.2d 1198 (3d Cir. 1973).

5. Roberts v. United States, 491 F.2d 1236 (3d Cir. 1974).

6. Woodward v. United States, 426 F.2d 959 (3d Cir. 1970).

7. Paradisio v. United States, 482 F.2d 409 (3d Cir. 1973).

8. United States of America v. Dixon, 504 F.2d 69 (3d Cir., 1974); Paradisio v. United States, *supra.*

9. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

10. Rule 11 of the Federal Rules of Criminal Procedure.

give you that opportunity to withdraw your plea.

THE COURT: Now has anyone told you what I am going to do as far as the sentence is concerned?

THE DEFENDANT: No, Your Honor.

THE COURT: And I might add again that they would have a difficult time reporting that because I haven't even thought of it. (N.T. 7, 8).

Petitioner had ample opportunity to explain to the Court any additional agreement which was the basis for his guilty plea. We can find no support for the proposition that the Court must inquire of a defendant whether anyone has promised to petition for a reconsideration of a sentence which has not yet been imposed.

In Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972), our Circuit held that the fact that counsel for the defendant assured the defendant that the Court would impose a concurrent sentence was not ground for post-conviction relief where such assurance was not a part of the understanding with the U. S. Attorney and was not made known to the Court. Certainly an assurance from an attorney that the sentence imposed would be a concurrent sentence is more crucial to the voluntariness of a plea than the assurance of a defense counsel that he will file a petition for a reconsideration of sentence. There is no question in this case that neither the Government nor the Court in any way indicated to the petitioner that his sentence would be reconsidered. The facts of this case are even more compelling because the petitioner had agreed to notify his attorney promptly upon the final disposition of his state court case and he failed to do so.

Finally, even if Mr. Garfunkel had petitioned this Court for a reconsideration of sentence after the final disposition of the petitioner's state court case and had fully complied with the agreement as alleged by the defendant, the petition would have been to no avail because the 120 day period of Rule 35 had elapsed. Under the circumstances, where the record clearly shows that the petitioner was asked all the recommended questions concerning the voluntariness of his plea and the extent of any agreements or promises made to him, the Court determines that the plea of guilty was voluntary.

This Memorandum and Order is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the following Order is entered:

### ORDER

And now, to wit, this 13th day of February, 1975, it is hereby ordered that the petition of Edward Murphy under 28 U.S.C. § 2255 is denied. There is no probable cause for appeal.

UNITED STATES of America, Defendant.