James George **SHEPHERD**, Petitioner,

v.

**UNITED STATES of America,**
Respondent.

Civ. A. No. 78–C–182.

United States District Court,
D. Colorado.

March 16, 1979.

Michael S. Axt, Asst. Federal Public Defender, Denver, Colo., for petitioner.

William C. Danks, Asst. U. S. Atty., Denver, Colo., for respondent.

## OPINION AND ORDER

CHILSON, District Judge.

James George Shepherd, (Shepherd) pursuant to 28 U.S.C. § 2255 has moved to vacate sentences imposed upon him in two cases in this court, 70–CR–31 and 70–CR–195.

After an evidentiary hearing, the matter is now before the Court for decision.

## FACTS

On April 9, an indictment was filed in the United States District Court for the District of Nebraska, charging Shepherd with a violation of the Dyer Act. In August 1970, the Nebraska action was transferred to this court pursuant to Rule 20 for disposition and is identified in this court as 70–CR–195.

In the meantime, on February 6, 1970, an indictment was filed in this court charging Shepherd with unlawful transportation in interstate commerce of stolen property and' is identified as 70–CR–31.

On August 7, 1970, arraignment was had in 70–CR–31 and a plea of guilty was tendered and received.

On September 23, 1970, arraignment was had in the Dyer Act case, 70–CR–195 and a plea of guilty was entered and received.

On September 23, 1970, with the consent of Shepherd and his counsel, sentence was imposed in both cases: 10 years imprisonment in 70–CR–31 and 5 years imprisonment in 70–CR–195 pursuant to 18 U.S.C. § 4208(a)(2), the sentences to run consecutively.

On October 13, 1970, Shepherd's counsel filed a motion for a modification of the sentences and on October 20, 1970, the Court modified the sentences to run concurrently instead of consecutively.

On February 21, 1978, Shepherd filed this Section 2255 motion to vacate his sentences on the ground that the Court in the arraignment and sentencing of Shepherd in the two criminal actions failed to comply with Rule 11 of the Federal Rules of Criminal Procedure. At the time of the arraignments and impositions of sentences, Rule 11 provided:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The Court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

Shepherd contends that since the Court did not comply with Rule 11, his pleas of guilty should be set aside and he should be permitted to plead anew. He cites *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), which requires strict compliance with Rule 11, and further provides that if there is not strict compliance sentence should be set aside and the defendant be entitled to plead anew.

The Court has carefully reviewed the arraignment and sentencing proceedings and from such review finds that the Court did not comply with that portion of the Rule which requires the Court to address the defendant personally to determine that the plea "is made voluntarily." The Court did advise the defendant of the nature of the charges and the consequences of a guilty plea to them. That the Court had ample grounds to satisfy itself that there was a factual basis for the plea is clearly evident from the defendant's detailed statement contained in the pre-sentence investigation report (Exhibit 1) in which he freely admitted the commission of the offenses and gave a detailed account of the facts and circumstances surrounding their commission.

It is essential to note, however, that unlike the *McCarthy* decision (which was a direct appeal of a conviction) the instant case is a collateral attack upon the convictions brought pursuant to 28 U.S.C. § 2255. In such proceedings, the Rule of strict compliance adopted in the *McCarthy* decision does not apply.

In *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) the Court stated, citing *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962):

" '[C]ollateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested [in *Hill* ] that the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' " 417 U.S. at 346, 94 S.Ct. at 2305.

To apply the foregoing rule to this case, we examine the record, including the evidence received at the evidentiary hearing.

We first point out that in his motion, Shepherd states in part:

"I did not steal the airplane that I was given ten years for. _ _ _ I only had knowledge that he (Norman Howard) was going to do it."

Shepherd was not charged with stealing an airplane. In 70–CR–31, he was charged with unlawful transportation of stolen property,

"To wit, aircraft radios and aircraft equipment." (See indictment 70–CR–31)

Shepherd has never denied this charge or the Dyer Act charge (70–CR–195) but as we have previously mentioned, Shepherd, in his interview with Mr. Carroll (who prepared the pre-sentence investigation report) (Exhibit 1) stated in considerable detail the facts and circumstances surrounding the commission of both the Dyer Act offense and his participation in stealing and interstate transportation of stolen aircraft radios and equipment.

The principal basis of Shepherd's motion is (a) that his sentences were unduly severe and (b) that he pleaded guilty because he was told by two persons (Silvola and McCord):

"That they had talked to the Judge and United States Attorney and agreed that if I pleaded guilty I would get either probation or at most, a sentence under the Federal Youth Act."

As to the severity of the sentences imposed, they were within the limits prescribed by law and within the limits which the Court advised Shepherd could be imposed if he pleaded guilty. This is not a ground for which relief may be granted in this proceeding.

The second ground requires findings of fact from the records and files and the evidence received at the evidentiary hearing. In April 1969, Shepherd was arrested in Littleton, Colorado, on the Dyer Act charge which was then pending in the State of Nebraska. One Richard Davis who resided in Colorado Springs, Colorado, posted bond for his release. Shepherd then returned to Colorado Springs and began living with Davis. At that time and prior thereto, Davis was the ringleader in an illegal enterprise consisting in part of stealing airplanes and airplane radios and other aircraft equipment in various parts of the United States and selling them in the United States and other countries. Shortly after Shepherd went to Colorado Springs, he was employed by Davis to participate in the illegal enterprise by stealing and transporting in interstate commerce airplane radios and aircraft equipment, for which services Davis compensated him.

During December 1969, Shepherd drove a Ford Pickup truck pulling a trailer full of stolen items from Colorado Springs to Saskatoon, Canada. Shepherd further stated that he became involved in the first place with Davis through his appreciation for Davis getting him out on bond. After he began working for Davis, he was afraid to quit and became further involved, and that while working for Davis, he had stolen approximately $200,000 of aircraft equipment and had personally received between $10,000 and $15,000 from Davis. (See Exhibit 1)

In support of his contention that prior to his pleas of guilty, he was assured by Silvola and McCord that the district attorney's office and the presiding judge had agreed to a deal that if he pleaded guilty, he would get probation or at the most a six-year sentence under the Youth Corrections Act, Shepherd offered into evidence the deposition of himself and Davis, and the testimony of Mrs. Davis.

To summarize this evidence, it appears that Silvola was an attorney in Colorado Springs who at times represented Davis and participated in some of the illegal enterprises in which Davis was engaged. McCord and Davis apparently had some dealings. McCord at that time was an agent for the Colorado Bureau of Investigation, but was later discharged because of accepting money from Davis. McCord told Davis that he had arranged with the district attorney's office and the presiding judge that Shepherd would either receive probation or a sentence not to exceed six years. There

were other discussions between Davis and Silvola and McCord about arranging a deal that would assure that Shepherd would either get probation or at the most six years under the Youth Offenders Act. Mrs. Davis also testified that she heard a similar discussion between Davis and McCord in which McCord told Davis that the prosecutor would recommend accordingly.

Davis testified that he did not see Shepherd personally after his arrest and had no conversations with Shepherd about the disposition of the criminal cases and that he was unaware of the sentences imposed upon Shepherd until December of 1977 when Davis and Shepherd met in the Leavenworth Penitentiary where they were both confined. Davis suggested to Shepherd that the present proceedings be taken and Davis assisted Shepherd in the preparation of his motion which is presently before the Court.

The Government called two witnesses who were in the United States Attorney's office at the time the sentences were imposed upon Shepherd and testified that no such deal had been discussed with any one and that it was the policy of the United States Attorney's office to not become involved in any plea bargaining as to the sentence which would be imposed by the presiding judge.

Davis in his deposition confirmed the fact that Shepherd was involved in his illegal enterprise of stealing aircraft equipment. Silvola testified in essence that although he had known Shepherd since 1970, that he never talked to him about any deal relating to the sentences Shepherd would receive if he pleaded guilty and that he never at any time represented Shepherd as his attorney.

It is not the contention of Shepherd that any deal was in fact made. He does contend that in view of the alleged assurances of McCord and Silvola that such an arrangement had been made, it affected the voluntariness of his pleas of guilty.

At the time of his arraignment and sentencing in both cases, Shepherd was represented by Brian Morgan, a state public defender experienced in the defense of criminal cases. There is no evidence that Shepherd told his attorney anything about a sentencing agreement. Shepherd, on the grounds of privilege, refused to answer questions as to whether or not he told his attorney about the alleged deal. After the sentences were imposed, neither Shepherd nor his attorney advised the Court that the sentences were contrary to the alleged sentencing agreement, nor did the motion for reduction of sentence, which was granted in part, make any mention of the alleged sentence agreement. Shepherd named no one to whom he had stated that there was a sentencing agreement, nor did Shepherd communicate to Davis that the alleged sentencing agreement had been violated and he took no action whatsoever with respect to the alleged sentencing agreement until it was suggested by Davis in December of 1977 at Leavenworth Penitentiary where they were both incarcerated.

The Court further finds that it was Davis who suggested the collateral attack based on the alleged sentencing agreement and it was Davis who assisted Shepherd in the preparation of that action.

It is incredible that Shepherd would remain silent about the alleged sentencing agreement for more than seven years if in fact he had been told that such an agreement had been made.

From the evidence, the Court finds that no sentencing agreement had been made and that neither Silvola nor McCord told Shepherd that such a sentencing agreement had in fact been entered into.

## CONCLUSIONS

The Court concludes that its failure to strictly comply with Rule 11 in all respects did not prejudice Shepherd and did not result in a miscarriage of justice. The facts as found by the Court do not reveal exceptional circumstances which indicate that the need for the relief sought is apparent. The motion to vacate the sentences imposed by the Court in Criminal Actions 70–CR–31 and 70–CR–195 should be denied.

IT IS THEREFORE ORDERED that the motion to vacate the sentences imposed in

Criminal Actions 70–CR–31 and 70–CR–195 are hereby denied.