This is an appeal from the judgment and sentencing of the appellant by the Meigs County Court of Common Pleas, wherein the appellant was sentenced to a total of fifteen years, on three felony counts, to which he had entered pleas of guilty on March 16, 1998.
Appellant asserts three assignments of error in the court below:
1. COUNSEL FOR APPELLANT INEFFECTIVELY ASSISTED IN HIS DEFENSE WHEN HAVING HIM PLEAD TO AN INFORMATION, WHEN THE STATE HAD NO SUFFICIENT PROBATIVE EVIDENCE IN WHICH TO INDICT OR CONVICT.
2. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN NOT EXPLAINING THE NATURE AND OR ELEMENTS OF THE OFFENSES HE PLEAD TO THEREBY, RENDERING THE APPELLANT'S PLEA INVOLUNTARY.
3. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IMPOSING THE MAXIMUM ALLOWABLE TERM FOR THE OFFENSES, AND IMPOSING CONSECUTIVE TERMS WHEN THE APPELLANT DID NOT COMMIT THE WORST FORM OF THE OFFENSE AND APPELLANT DID NOT POSE THE GREATEST LIKELIHOOD OF RECIDIVISM.
On February 6, 1998, appellant Richard E. Underwood shot and killed his brother, William Underwood, with a shotgun, believed to be a .16 gauge. The appellant and his brother, William, apparently lived together. Appellant apparently shot William twice with a shotgun following an argument and struggle between them. The first shot severely wounded William, and the appellant fired the second, fatal shot at close range to the back of William's head, possibly at his brother's request.
The Meigs County Prosecutor's Office apparently presented this case to the Meigs County Grand Jury at least once, in an attempt to indict the appellant for Aggravated Murder, but failed in this effort.
On March 16, 1998, the appellant was brought before the Meigs County Common Pleas Court, pursuant to a Bill of Information. The information charged the appellant with three felonies, to wit:
 1. Involuntary Manslaughter: First Degree Felony, in violation of R.C. 2903.04(A). This count included a firearm specification, carrying an additional mandatory three year period of incarceration;
 2. Having Weapon Under Disability: Fifth Degree Felony, in violation of R.C. 2923.13(A)(4); and
 3. Abuse of a Corpse: Fifth Degree Felony, in violation of R.C. 2927.01(B).
At the March 16, 1998, hearing, the appellant, who was represented by counsel, entered pleas of guilty to all three of the charges stated in the Bill of Information. Thereupon, the court sentenced the appellant to a term of thirteen years in prison: ten years on Count 1, plus three additional years on the firearm specification, as required by law.
On Counts 2 and 3, the court ordered that a pre-sentence investigation be completed for the court's review, prior to imposition of sentence on these counts. Thereafter, on May 4, 1998, the appellant was sentenced to one year of incarceration on each of the remaining two counts. These sentences were ordered to be served consecutively with each other, as well as consecutively to the thirteen years imposed by the court at the March 16, 1998, hearing. This amounts to a total of fifteen years, the maximum incarceration period for the charges against the appellant.
 OPINION I.
Appellant's first assignment of error involves a claim of ineffective assistance of counsel at the appellant's plea and sentencing hearings held on March 16, 1998, and May 4, 1998. Ohio has adopted the standard set forth in Strickland v.Washington (1984), 466 U.S. 688, 80 L.Ed.2d 674, 104 S.Ct. 2052
for determining whether a criminal defendant received ineffective assistance of counsel. See State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373, 379. The Strickland
Court established that, in order for a defendant to prevail on an allegation of ineffective assistance of counsel, he must show both that counsel's actions "fell below an objective standard of reasonableness," and that the defendant was prejudiced by the attorney's conduct. Strickland v. Washington,466 U.S. at 688, 693, 80 L.Ed.2d at 693, 697,104 S.Ct. at 2064, 2067. In Ohio, the standard for determining prejudice in cases alleging ineffective assistance of counsel is whether there is a "reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, paragraph three of the syllabus.
Appellant points to several actions and inactions on the part of trial counsel that he asserts fell below theStrickland standard. First, the appellant contends that he received no benefit from the plea agreement, which he claims is prima facie evidence of ineffective assistance of counsel. He also maintains that he did not commit the offenses charged in the indictment and should never have pled guilty to them. Finally, the appellant claims that his attorneys did not file any motions or obtain any discovery to determine the extent of the prosecution's evidence.
When evaluating an attorney's representation of a criminal defendant, courts must give the attorney wide deference since there are typically a number of reasonable strategies available to defense counsel in such cases. Strickland, supra. If the prosecution has strong evidence that the defendant committed a serious crime the defendant might be wise to plead to a lower charge in order to receive a lesser penalty even if his conduct does not fit the elements of the lesser crime. Therefore, in the case at bar, the reasonableness of defense counsels' representation of the appellant hinges on the reasonableness of his plea.
Appellant cites State v. Spivey (1998), 81 Ohio St.3d 405,692 N.E.2d 151, certiorari denied (1998), 119 S.Ct. 226,142 L.Ed.2d 138, for the proposition that if defense counsel permits the defendant to enter a guilty plea, without the defendant receiving any benefit in return, a prima facie case of ineffective assistance of counsel exists. The Defendant inSpivey pled no contest to aggravated murder and was sentenced to death. Id. at 407, 692 N.E.2d at 155. Spivey claimed that he had received ineffective assistance of counsel, in part because he had received no benefit from his plea. Id. at 418,692 N.E.2d at 163. The Spivey Court did not rule on the issue of whether the lack of any benefit from a guilty plea is prima facie evidence of ineffective assistance of counsel. Instead, the court pointed out that the defendant had received some benefit from his plea. Id. The prosecutor in Spivey could not, and did not, guarantee that the defendant would not receive a death sentence. The prosecutor did, however, agree neither to recommend a death sentence, nor to strenuously challenge defense witnesses. Id. In addition, the plea allowed Spivey to present mitigating evidence without a presentation of the gruesome details of the crime. Id. at 419,692 N.E.2d at 163.
Defense counsel in a criminal case has a duty to zealously represent his client within the bounds of the law. An attorney, who advises his client to plead guilty as charged when the client receives no benefit at all in exchange therefor, could possibly be deemed to have failed in his duty to competently represent his client.
However, Spivey illustrates that the benefit a defendant receives as a result of pleading guilty is not necessarily reflected by the penalty ultimately imposed on him. We find that we must consider the totality of the circumstances surrounding the plea in determining whether the appellant received any benefit in exchange for the plea.
While the record does not confirm his assertion, the appellant claims that the prosecution twice failed to indict him on an Aggravated Murder charge in this case. Even assuming,arguendo, that this claim is true, we find no merit in the appellant's assertion that the prosecution would inevitably have been forced to seek an indictment for involuntary manslaughter. If the prosecution was unable to indict the appellant for Aggravated Murder it could still have sought an indictment for Murder under R.C. 2903.02, which carries a more stringent penalty than the charges to which the appellant pled in this case.
Aggravated Murder requires that the offender "purposely, and with prior calculation and design, cause the death of another," R.C. 2903.01(A), and carries a potential penalty of death or life in prison. R.C. 2929.02(A). In contrast, Murder requires only that the offender "purposely cause the death of another," R.C. 2903.02(A), and carries an indefinite term of fifteen years to life in prison. R.C. 2929.02(B). In the case at bar, if the appellant had been indicted for Murder, he would have faced the possibility of a much longer prison term than he ultimately received in the court below.
Licensed attorneys are presumed competent and courts generally must defer to their judgment regarding defense strategy. Strickland, supra. The appellant has not pointed to anything in the record that rebuts this presumption of competence. Trial counsel was in a far better position than this court to evaluate the possibility that a grand jury would indict the appellant on a Murder or Aggravated Murder charge. In fact, the appellant's own statement of the facts indicates that he could well have been convicted of Murder, in which case he could have been sentenced to considerably more than the fifteen years in prison imposed by the trial court for the three felonies to which he pled guilty. Considering the circumstances of this case, we find the appellant's plea was reasonable and he was not denied the effective assistance of counsel in the court below.
The appellant's first assignment of error is OVERRULED.
 II.
In his second assignment of error, the appellant claims that his plea was involuntary because the trial court did not inform him of the nature and elements of the charges against him. A trial court is required to inform the defendant personally of certain rights prior to accepting a guilty plea from him, and must also be satisfied that the defendant understands these rights. Under Crim.R.11(C), a trial court may not accept a guilty plea:
* * * without first addressing the defendant personally and doing all of the following:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or community sanctions.
 (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 (c) Informing the defendant and determining that the defendant understands that the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
Crim.R. 11(C)(2)
The appellant correctly states that a guilty plea must be voluntary and intelligent in order to satisfy the requirements of due process. McCarthy v. United States (1969), 394 U.S. 459, 165, 22 L.Ed.2d 418, 425, 89 S.Ct. 1166, 1170. However, the appellant implies that the trial court has a duty to explain each and every element of each and every offense charged against the defendant. The appellant states that the trial court must "make sure [the defendant] has a 'full understanding' of the offense he is pleading to," and citesState v. Bowen (1977), 52 Ohio St.2d 27, 28, 6 O.O.3d 112, 113,368 N.E.2d 843, 844 in support of this proposition. Finally, the appellant claims that a trial court cannot accept a guilty plea unless there is at least some evidence to support the defendant's guilt.
A guilty plea "is a complete admission of the defendant's guilt," and the court need not hear any other evidence in order to accept it. Crim.R. 11(B)(2). The purpose of the procedures under Crim.R. 11 is to make sure the defendant's guilty plea is voluntary and intelligent. McCarthy, supra. It is not necessary for the trial court to recite the elements of each crime charged. State v. Rainey (1982), 3 Ohio App.3d 441, 442,446 N.E.2d 188, 190. Rather the court must be able to determine from the totality of the circumstances that the defendant understands the charges. Id.
The transcript of the proceedings of the trial court clearly indicates that the judge below complied with the requirements of Crim.R. 11. The appellant's attorneys informed the court that they had explained the charges to him, and the appellant stated to the court that he understood them. The prosecutor outlined the case against the appellant, and the appellant agreed that the facts were basically correct. While there may have been some minor confusion regarding the court's discretion with respect to sentencing, at all times it was very clear that the appellant was facing a maximum of fifteen years in prison. The court also explained all of the pleas that the appellant could offer, as well as the effect of a guilty plea, and the fact that the court could proceed immediately to sentencing after a guilty plea. The court specifically explained all of the rights that the appellant waived if he pled guilty and gave up his right to a trial. Finally, the record reflects that the court specifically explained to the appellant that he had the right to have a grand jury indict him before the state could charge him with a felony, unless he agreed to proceed under the bill of information.
We find that the trial court complied with Crim.R. 11, by explaining the appellant's rights to him before accepting his plea. From the record below, and considering the totality of the circumstances, we find that the court was justified in believing the appellant understood the charges against him, that he understood the consequences of his plea, and that he appreciated the rights he forfeited by entering his guilty plea.
The appellant's second assignment of error is OVERRULED.
 III.
The appellant's third assignment of error alleges that the trial court erred in imposing the maximum sentence on each count, and also erred in ordering that the appellant serve the sentences consecutively. Although R.C. 2929.12 generally gives courts discretion over sentencing decisions in felony cases, other provisions in the Revised Code limit that discretion. Courts are required to consider the seriousness and recidivism factors listed in R.C. 2929.12(B) through (E) before imposing sentence in a felony case. In order to impose a maximum sentence on an offender, the court must find either that the defendant committed one of the worst forms of the offense or that the defendant poses the greatest likelihood of committing future crime. R.C. 2929.14(C). Finally, courts must comply with R.C. 2929.14(E)(3), by making certain findings, in order to impose consecutive sentences for multiple offenses.
The appellant correctly asserts that the trial court must give reasons for its sentence whenever it imposes consecutive sentences or a maximum sentence. R.C. 2929.19(B)(2)(c), (d) and (e). However, while it may be preferable for the trial court to put it reasons in the judgment entry, this is not necessary in order to satisfy R.C. 2929.19(B)(2). State v. Patterson (Sept. 21, 1998), Washington App. No. 97CA28, unreported. The court's reasons, either oral or written, need only appear somewhere in the record. Id. In the case at bar, the sentencing entry, and the transcript of the sentencing hearing, show that the court made the required findings, and gave sufficient reasons for the sentence it imposed.
As the appellee points out, the Fourth District has adopted a four-part test when reviewing a trial court's sentence.State v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11 (unreported). The appellate court must consider the following issues:
 (1) Did the trial court considered the [R.C. 2929.12] factors?
 (2) Did the trial court make the required findings?
 (3) Is there substantial evidence in the record to support the findings?
 (4) Is the trial court's ultimate conclusion clearly erroneous?
 Id. citing Griffin Katz, Ohio Felony Sentencing Law 1998, § 9.16.
As part of the plea agreement, the appellant stipulated to certain factors listed in R.C. 2929.12(B) and (D), which elevated both the seriousness of the appellant's offenses, and the appellant's likelihood of recidivism. Appellant also stipulated that there were no mitigating factors under R.C.2929.12(C). The trial court specifically considered these same factors, as well as the factors contained in R.C. 2929.13(B) at the sentencing hearing on May 4, 1998, before imposing sentence on Counts 2 and 3. Finally, the trial court's sentencing entry shows that the court made the findings required by R.C.2929.14(C) and (E)(3) in order to impose maximum and consecutive sentences, respectively.
The record of the proceedings below reflects that the trial court fulfilled all four parts of the Dunwoody test. The trial court's findings, and the reasons for those findings, were properly made and are clearly supported by substantial evidence in the record. Considering the seriousness of the crimes and the appellant's record of numerous, if less serious, offenses, there is evidence to support the findings of the court below. Finally, we find that the court's ultimate sentence cannot be said to be clearly erroneous.
The appellant's third assignment of error is OVERRULED.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Kline, P.J:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ David T. Evans, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.