LBYRNES, Judge.
The defendant, Kellie A. Pichón, appeals based on the contention that the trial court erred in denying her motion to withdraw her guilty plea to the unauthorized entry into an inhabited dwelling, a violation of La. R.S. 14:62.3. Subsequently, the defendant entered a guilty plea as a second offender and was sentenced to three years in the Department of Corrections pursuant to La. R.S. 15:529.1. We affirm.
The defendant was charged by bill of information on June 26, 1995, with unauthorized entry into an inhabited dwelling. At her arraignment on July 5, 1995, the defendant pleaded not guilty. After a preliminary and motion hearing the trial court found probable cause for the charge. On October 3, 1995, the day set for trial, the defendant withdrew her earlier plea and entered a plea of guilty as charged. After a hearing, the trial court denied the defendant’s motion to withdraw the guilty plea on November 15, 1995. The defendant entered a guilty plea to the multi.ple bill, waived all legal delays, and was sentenced to serve three years at hard labor as a second offender. Her appeal followed.
La.C.Cr.P. art. 559 provides in pertinent part that “[t]he court may permit a plea of guilty to be withdrawn at any time before sentence.” However, the ^defendant has no absolute right to withdraw a previously entered plea of guilty. State v. Lewis, 633 So.2d 315 (La.App. 1 Cir.1993). The withdrawal of the guilty plea is within the discretion of the trial court, and it is subject to *503 reversal only if the discretion is abused or arbitrarily exercised. State v. King, 93-2146 (La.App. 4 Cir. 6/30/94), 639 So.2d 1231.
The defendant does not argue that her plea was not knowingly and intelligently made. A valid guilty plea is knowingly and intelligently made when the defendant was informed of and waived his constitutionally guaranteed right to trial by jury, right of confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). In determining whether the defendant’s plea is knowing and voluntary, the court must not only look to the colloquy concerning the waiver of rights, but may also look at other factors which may have a bearing on the decision. State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982); State v. Galliano, 396 So.2d 1288 (La.1981). In ruling on a motion to withdraw a guilty plea, a trial court is not limited to a review of the guilty plea colloquy; it has the discretion to also order an evidentiary hearing. State v. Greer, 572 So.2d 1166,1169 (La.App. 1 Cir.1990).
In the present case the guilty plea transcript shows that the defendant was properly informed of and waived her Boykin rights. The defendant affirmed that she understood that she was pleading guilty to the charge of unauthorized entry of an inhabited dwelling.. She agreed that no one had forced, threatened or intimidated her. The trial court informed the defendant of the consequences of a guilty plea, and that she could receive mandatory jail time if the prosecutor filed a multiple bill, and if she were found guilty and sentenced as a multiple offender.
UThe defendant argues that the trial court abused its discretion in denying her motion to withdraw her guilty plea because there was no factual basis for the acceptance of the plea. The defense contends that because a plea of guilty operates as an admission of factual guilt, each essential element of the crime charged must have a factual basis, citing McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In that case the United States Supreme Court found that the trial court must determine that the plea was voluntarily made. The guilty plea was set aside because the trial judge did not personally address the defendant as to his understanding of the nature of the charge, where the charge encompassed lesser included offenses. The Supreme Court noted that the 1966 amendment to Fed. Rule Crim. Proc. 11 stated in pertinent part: “The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.” Id., 394 U.S. at 463, fn. 4, 89 S.Ct. at 1169, fn. 4.
In United States v. Johnson, 1 F.3d 296 (5 Cir. (Texas) 1993), the Fifth Circuit granted an en banc review and noted that Federal Rule of Criminal Procedure ll’s section (h), which was added by the 1983 amendments provides a “harmless error” review and states: “Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.” The federal appellate court reviewed the plea colloquy under the harmless error standard to determine whether the trial court’s imperfection affected substantial rights of the defendant. That reviewing court held that the failure of the trial court to advise the defendant, who understood that the least incarceration he was likely to receive under the sentencing guidelines was 21 years, that one offense happened to include a one-year mandatory minimum penalty, was harmless error.
ln State v. Cook, 591 So.2d 1248 (La.App. 5 Cir.1991), the appellate court upheld the trial court’s denial of the defendant’s withdrawal of his guilty plea prior to sentencing to the offense of two counts of armed robbery. The appellate court found that the record contained objective evidence of a voluntary and intelligent waiver of known constitutional rights. That court did not address the issue of whether there was a factual basis for each essential element of the crime charged.[1] The appellate court stated:
*504 The trial court failed to explain to the defendant the elements of the offenses to which he pled guilty. However, the validity of a guilty plea does not depend upon whether or not the trial court specifically informed the accused of every element of the offense. Rather, the defendant must establish that his lack of awareness of the elements resulted in his unawareness of the essential |5nature of the offense to which he was pleading. State v. Bówick, 403 So.2d 673 (La.1981).
Id., 591 So.2d at 1251.
In State v. Bourgeois, 406 So.2d 550, 552 (La.1981), the Louisiana Supreme Court stated:
Bourgeois attempted to withdraw his plea because he claimed there was no evidence that he actually possessed cocaine while in Louisiana. But, it is well-settled that a guilty plea by its nature admits factual guilt and relieves the state of the necessity to prove it by a contested trial. State v. Crosby, 338 So.2d 584 (La.1976).
There is no argument by Bourgeois that his plea was not knowingly or voluntarily made, nor does he argue that the state breached the plea bargain agreement. Bourgeois does not claim lack of notice as to the nature of the charge against him nor does he claim that the plea is constitutionally infirm for any other reason.[2]
We conclude that there must be a factual basis for the guilty plea based on a knowing and voluntary waiver of rights, i.e., a proper Boykinization, or there must be a factual basis showing that the guilty plea was not defective. For example, the record must refute a defendant’s claim of a defect based on a failure of the defendant to understand the charge or a claim that a plea bargain was not upheld. However, the trial court need not find a factual basis for each essential element of the offense.
*505 In the present case we reject the defendant’s argument that there is no factual basis for the plea because the entry into the residence was authorized where the defendant did not claim that she was unaware of the elements of the crime | 6when she pleaded guilty.[3] In the present case, the trial court conducted a preliminary and motion hearing, as well as an evidentiary hearing on the defendant’s motion to withdraw her guilty plea. Knowing the circumstances surrounding the guilty plea, the trial judge was within his discretion in determining 17that there was a factual basis for the acceptaneé of the guilty plea. The trial court’s refusal to allow the defendant to withdraw her plea of guilty prior to sentencing was not an arbitrary and palpable abuse of the trial court’s broad dis-cretion.
Accordingly, the defendant’s convictions an(^ sentence are affirmed.

CONVICTIONS AND SENTENCE AFFIRMED

. See also State v. Jones, 484 So.2d 933 (La.App. 1 Cir.1986).
In State v. O'Brien, 623 So.2d 698 (La.App. 4 Cir.1993), writ denied 629 So.2d 398 (La. 1993), *504 this court found an abuse of discretion in denying the withdrawal of the guilty plea based on the Boykinization of the underlying offense; however, this court did not review whether there was a factual basis for the elements of possession of marijuana. See also State v. Jackson, 519 So.2d 254 (La.App. 5 Cir.1988), .in which the defendant's plea of guilty was invalid because the trial court did not advise defendant of his right against self incrimination or of his right to confront his accusers. The appellate court did not address the issue of whether there was a factual basis for the elements of the charge of driving while intoxicated.
In State v. Johnson, 406 So.2d 569 (La.1981), the Louisiana Supreme Court found that the defendant failed to show that he had been intimidated when he entered his guilty plea, and he was properly Boyldnized so that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.
In State v. Franks, 391 So.2d 1133, 1135-6 (La. 1980), certiorari denied by Franks v. Louisiana, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981), the Louisiana Supreme Court noted that the record reflected that the trial court “extensively interrogated defendant prior to accepting his pleas of guilty. Defendant was clearly informed of the charges against him and he stated that he understood those charges. Defendant was also informed of the various constitutional rights he would forego by pleading guilty. Defendant had ample assistance of counsel in making his decision to plead guilty.” The Supreme Court upheld the trial court's denial of the defendant’s motion to withdraw his guilty plea before he was resen-tenced on remand. .
In State v. Dantoni, 520 So.2d 1270 (La.App. 5 Cir.1988), the appellate court found that the trial court was without jurisdiction to accept the guilty plea without an amendment to the bill of information. The defendant was charged with receiving stolen goods valued at $5,000 in violation of La. R.S. 14:69. However, he pleaded guilty to unauthorized use of a movable in violation of La. R.S. 14:68. The appellate court stated that: "... the definition of unauthorized use of a movable requires the ‘intentional taking or use’ which is an element of the crime not required to be proven under the crime of illegal possession of stolen things.” Dantoni, id., 520 So.2d at 1272. The bill of information did not properly inform the defendant of the crime for which he was charged. In the present case the .defendant does not claim that she was unaware of the elements of the crime charged.

. In Bourgeois, supra, the Louisiana Supreme Court had previously vacated the sentence for possession with intent to distribute cocaine and remanded the case for resentencing. The defendant then filed his motion to withdraw his sentence, which was denied by the trial court, and the defendant was then resentenced. On review the Supreme Court again vacated the sentence and remanded for resentencing but upheld the denial of the defendant’s motion to withdraw his guilty plea.

. Moreover, in the present case the record shows that the elements of an unauthorized entry existed.
Officer Byron Corley and Connie Newman, the victim, testified at the preliminary and motion hearing. Ms. Newman stated that between 8:00 and 8:30 p.m. the lights in her house went out. When Ms. Newman was going toward her fuse box on the outside of her house, she saw the defendant "cussing and fussing stating things about looking for her boyfriend." Ms. Newman walked back into her house and closed the door, leaving the defendant "using profanity" on the front porch. After threatening to break the glass on the door if Ms. Newman did not open it, the defendant broke the glass and entered Ms. Newman’s house. Ms. Newman went to her son’s room to get him because the house was dark. Meanwhile, the defendant went into the first two rooms of the house looking for her boyfriend. When she did not find him, she left threatening to kill Ms. Newman.
Officer Byron Corley investigated the disturbance at 4412 General Pershing Street about 8:45 p.m. on May 18, 1995. He met Ms. Newman at her residence and noticed that her front porch was covered with blood. He saw the broken glass pane and blood throughout the house. After talking with Ms. Newman, the officer was advised by the police dispatcher that a subject named Ms. Pichón was treated for a laceration at the emergency room at Charity Hospital.
At the hearing on the multiple bill on November 15, 1995, the defense attorney asked if the defendant could withdraw her guilty plea because the victim did not want to see the defendant jailed. Connie Newman testified again after the trial court assigned an attorney to-represent her. Upon being questioned by her attorney, Ms. Newman answered that she did not lock her door when she closed it to get away from the defendant, and she did not know how the defendant entered her house. When asked if Kellie Pichón was invited into the house, she replied, "I did not invite Kellie inside the door from the outside. And with all the commotion, I may have stated to her, after this incident was done, ‘Well, you can see for yourself'.” Ms. Newman said that she did not make that statement while the defendant was outside the door. When she was asked why she was testifying, Ms Newman answered, "Because I don’t think she should go to jail for that."
The defendant testified that:
I did not enter her house without her authorization. I turned the power off. I broke the glass. I did use foul language; I was upset. Okay? But once the glass broke and on the police report shows you that the door was locked. It’s no way I was weighing 130 pounds at the time, no way I could have broke into this house. Okay?
Now, that’s the truth. She says she’s willing to tell you the truth, that she opened the door for me, which she did.
At that point the trial court noted, "She's shaking her head no, ma'am.” And Ms. Newman said, "Because I can’t say that I opened the door." The defendant answered, "That's what you did."
The victim admitted that while she did not invite the defendant into her home, and she did not open the door for her to enter, Ms. Newman may have stated, “Well, you can see for yourself” to the defendant after she was in the house. However, Ms. Newman’s comment after the defendant was in the house does not have any bearing on the elements of unauthorized entry.
At the sentencing hearing Ms. Newman reiterated that she did not invite the defendant inside her residence. The victim had gone inside herself and closed the door. Ms. Newman's comment to the defendant to "see for yourself” was made after the defendant was inside the house. Instead of being an invitation to enter, the comment was a recognition that the defendant was already there. The record shows that the trial court could conclude that the defendant entered the house without the victim’s permission.